**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ROBERT L. ALBRITTON, *et al.*,<br><br>*Defendants*. | CASE NO. 4:26-CV-06268-AH |

**DEFENDANTS' MOTION TO DISMISS COMPLAINT**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**
**AND BRIEF IN SUPPORT**

Robert L. Albritton, Jay Graham, David C. Baggett, John W. Bellinger, James R. Brooks, Michael A. Hernandez III, William Mahomes, Jr., Kelley Sullivan Georgiades, and Sam Torn, all in their official capacities as members of the Texas A&M University System Board of Regents (collectively "Defendants"), file this Motion to Dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully would show the Court as follows.

# TABLE OF CONTENTS


Table of Contents ........ ii
Index of Authorities ........ iii
Priority Determination Of Subject Matter Jurisdiction ........ 1
Background And Relevant Facts ........ 1
Issues Presented ........ 3
- I. Plaintiffs Lack Standing ........ 3
- II. Plaintiffs' Claims Are Not Ripe. ........ 7
- III. Defendants Are Entitled To Sovereign Immunity. ........ 8
- IV. Plaintiffs Failed To State A Valid Claim. ........ 12
  - A. Plaintiffs' Facial First Amendment Claim ........ 12
  - B. Fourteenth Amendment Facial Vagueness Claims. ........ 19

Conclusion ........ 22
Certificate of Conference ........ 23
Certificate of Service ........ 23

## INDEX OF AUTHORITIES

**Cases** **Page(s)**

*A&R Eng. & Testing, Inc. v. Scott*,
72 F.4th 685, 690 (5th Cir. 2023) ....7

*Anderson v. Valdez*,
845 F.3d 580 (5th Cir. 2016) ....15

*Ataman v. Daum*,
*No. 4.23-cv-2637*, 2024 U.S. Dist. LEXIS 171492, at *4 (S.D. Tex. Sep. 23, 2024) ....1

*Bartello v. City of Sunbury*,
No. 4:13-CV-1340, 2013 U.S. Dist. LEXIS 183949, at *37 (M.D. Pa. Sep. 25, 2013) ....18

*Black Emergency Response Team v. Drummond,*
*Nos. 24-6139, 24-6140, 24-6141*, 2026 U.S. App. LEXIS 27669, (10th Cir. Sep. 9, 2026) ....21

*Board of Regents of Univ. of Wis. System v. Southworth*,
529 U.S. 217, 120 S. Ct. 1346, 146 L. Ed. 2d 193 (2000) ....13

*Boos v. Barry*,
485 U.S. 212 (1988) ....21

*Buchanan v. Alexander*,
919 F.3d 847 (5th Cir. 2019) ....15

*Canada Hockey LLC v. Marquardt*,
No. 4:17-CV-00181, 2026 U.S. Dist. LEXIS 111887, at *2 (S.D. Tex. Feb. 13, 2026) ....9

*Champagne v. Jefferson Parish Sheriff's Office*,
188 F.3d 312 (5th Cir. 1999) ....10

*Chiras v. Miller*,
432 F.3d 606 (5th Cir. 2005) ....18, 19

*Choice Inc. of Texas v. Greenstein*,
691 F.3d 710 (5th Cir. 2012) ....7

*Chowdhury v. University of Houston*,
No. 4:25-cv-467, 2026 U.S. Dist. LEXIS 56253, at *6–7 (S.D. Tex. Mar. 18, 2026) ....9

*Clapper v. Amnesty Int'l, USA*,
568 U.S. 398 (2013) ....4, 5

*Coates v. City of Cincinnati*,
402 U.S. 611 (1971) ....20

*Columbia Broadcasting System, Inc. v. Democratic National Committee*,
412 U.S. 94, 139 n.7 (1973) (Stewart, J., concurring) ....13

*Crenshaw-Logal v. City of Abilene*,
436 F. App'x 306, 308 (5th Cir. 2011) .................................................................... 1, 5

*Dier v. Landry*,
No. 2:24-cv-2306, 2026 U.S. Dist. LEXIS 88339, at *17–18 (E.D. La. Apr. 22, 2026)........... 8

*Doe v. Univ. of Tex. at S.A.*,
No. SA-25-CA-01140, 2026 U.S. Dist. LEXIS 34424, at *13 (W.D. Tex. Feb. 19, 2026) ...... 9

*Dolce v. Connecticut Cent. Ch. Dist.*,
No. 25-1197, 2026 U.S. App. LEXIS 26560, at *15 (2d Cir. Aug. 31, 2026) .......................... 15

*Edwards v. Cal. Univ. of Pa.*,
156 F.3d 488, (3d Cir. 1998)........................................................................................ 17

*Ex parte Young*,
209 U.S. 123 (1908) ..................................................................................................... 10

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024).................................................................................................. 4, 6

*Figueroa v. United States*,
No. 4:25-cv-1139, 2025 U.S. Dist. LEXIS 274026, at *7–8 (S.D. Tex. Dec. 11, 2025)............5

*Ford Motor Co. v. Tex. Dep't of Transp.*,
264 F.3d 493 (5th Cir. 2001)....................................................................................... 20

*Garcetti v. Ceballos*,
547 U.S. 410 (2006) .............................................................................................13, 14, 15

*Graziosi v. City of Greenville*,
775 F.3d 731 (5th Cir. 2015) ........................................................................................ 15

*Home Depot, Inc. v. Guste*,
773 F.2d 616 (5th Cir. 1985)....................................................................................... 20

*Hooks v. Office of Att. Gen. of Texas*,
No. 4:25-cv-2667, 2026 U.S. Dist. LEXIS 47585, at *8 (S.D. Tex. Mar. 9, 2026).................10

*In re GenOn Mid-Atl. Dev.*,
*L.L.C.*, 42 F.4th 523 (5th Cir. 2022) ...........................................................................1

*In re Paxton*,
60 F.4th 252 (5th Cir. 2023) ..........................................................................................1

*Johanns v. Livestock Marketing Assn.*,
544 U.S. 550, 125 S. Ct. 2055, 161 L. Ed. 2d 896 (2005) ................................................... 13

*Kilborn v. Amiridis*,
135 F.4th 1100 (7th Cir. 2025) .................................................................................... 16

*Kirkland v. FBI*,
No. SA-26-CV-01836-XR, 2026 U.S. Dist. LEXIS 147012, at *4, 7 (W.D. Tex. July 2, 2026) ....................5

*Kirkland v. Northside Ind. Sch. Dist.*,
890 F.2d 794 (5th Cir. 1989) ....................18

*La Pueblo Entero v. Abbott*,
151 F.4th 273 (5th Cir. 2025) ....................5

*La Pueblo Entero v. Abbott*,
No. 25-50246, 2026 U.S. App. LEXIS 24371 at *6–7 (5th Cir. Aug. 12, 2026) ....................4, 5

*La Union de Pueblo Entero v. Abbott*,
167 F.4th 743 (5th Cir. 2026) ....................2, 20

*Laird v. Tatum*,
408 U.S. 1, (1972) ....................5

*Little v. Llano County*,
138 F.4th 834 (5th Cir. 2025) ....................8, 17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................4

*McClelland v. Katy Indep. Sch. Dist.*,
63 F.4th 996 (5th Cir. 2023) ....................20

*McDonald v. Trustees of Indiana University*,
No. 25-2366, 2026 U.S. App. LEXIS 24504, at *26–27 (7th Cir. Aug. 13, 2026) (Easterbrook, J., concurring) ....................16

*Milw. Cty. Sheriff's Dept. v. Clarke*,
574 F.3d 370 (7th Cir. 2009) ....................18

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ....................2, 7, 8

*Moore v. Bryant*,
205 F. Supp. 3d 834 (S.D. Miss. 2016), *aff'd*, 853 F.3d 245 (5th Cir. 2017) ....................5

*Nathan v. Alamo Heights Ind. Sch. Dist.*,
173 F.4th 576 (5th Cir. 2026) ....................19

*National Endowment for Arts v. Finley*,
524 U.S. 569, 118 S. Ct. 2168, 141 L. Ed. 2d 500 (1998) ....................13

*NetChoice, LLC v. Paxton*,
121 F.4th 494 (5th Cir. 2024) ....................8

*Pennhurst State School & Hosp. v. Halderman*,
465 U.S. 89 (1984) .......... 9

*People for the Ethical Treatment of Animals v. Gittens*,
414 F.3d 23 (D. C. Cir. 2005) .......... 17

*Pernell v. Fla. Bd. of Govs.*,
181 F.4th 1135 (11th Cir. July 7, 2026) .......... 19

*Pickering v. Bd. of Education*,
391 U.S. 563 (1968) .......... 14

*Planned Parenthood of Houston & SE Texas v. Sanchez*,
480 F.3d 734 (5th Cir. 2007) .......... 10

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009) .......... 13

*Quern v. Jordan*,
440 U.S. 332 (1979) .......... 10

*Raj v. La. State Univ.*,
714 F.3d 322 (5th Cir. 2013) .......... 9, 10, 11

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) .......... 1

*Rice v. Schell*,
831 F. Supp. 3d 647 (S.D. Ohio 2026) .......... 17

*Richmond v. Coastal Bend Coll. Dist.*,
883 F. Supp. 2d 705 (S.D. Tex. 2012) .......... 15

*Roake v. Brumley*,
170 F.4th 292 (5th Cir. 2026) (en banc) .......... 7

*Rodriguez v. City of Corpus Christi*,
687 F. App'x 386, 389 (5th Cir. 2017) .......... 15

*Rosenberger v. Rector and Visitors of the Univ. of Va.,*
515 U.S. 819 (1995) .......... 13, 18, 19

*Roy v. City of Monroe*,
950 F.3d 245 (5th Cir. 2020) .......... 20

*Rust v. Sullivan*,
500 U.S. 173, 111 S. Ct. 1759, 114 L. Ed. 2d 233 (1991) .......... 13

*Rylander v. Brown*,
No. 4:25-CV-2079, 2025 U.S. Dist. LEXIS 154936, at *3–4, (S.D. Tex. Aug. 6, 2025) .......... 9

*Somers v. UT MD Anderson Cancer Ctr.,*
No. 4:19-CV-390, 2019 U.S. Dist. LEXIS 240018, at *4 (S.D. Tex. June 28, 2019).............. 9

*Stronach v. Va. State Univ.*,
No. 3:07CV646-HEH, 2008 U.S. Dist. LEXIS 2914, at *7–9 (E.D. Va. Jan. 15, 2008) .........17

*Sullivan v. Tex. A&M Univ. System*,
986 F.3d 593 (5th Cir. 2021) ........................................................................................ 9

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)......................................................................................................... 4

*Sweezy v. New Hampshire*,
354 U.S. 234 (1957) (Frankfurter, J., concurring)........................................................ 12, 16

*Tex. State LULAC v. Elfant*,
52 F.4th 248 (5th Cir. 2022)...........................................................................................5

*Texas Alliance For Retired Americans v. Scott*,
28 F.4th 669 (5th Cir. 2022).......................................................................................... 11

*Texas v. United States*,
523 U.S. 296 (1998) .........................................................................................................7

*Trump v. New York*,
592 U.S. 125 (2020) (per curiam).....................................................................................7

*U.S. v. Clinical Leasing Serv., Inc.*,
925 F.2d 120, n.2 (5th Cir. 1991) ................................................................................. 20

*United States v. Texas*,
173 F.4th 660 (5th Cir. 2026)...........................................................................................3

*United States v. Williams*,
553 U.S. 285 (1985).......................................................................................................21

*Urofsky v. Gilmore*,
216 F.3d 401 (4th Cir. 2000).........................................................................12, 13, 16

*Voting for America v. Steen*,
732 F.3d 382 (5th Cir. 2013) ......................................................................................... 2

*Warnoch v. Pecos*,
88 F.3d 341 (5th Cir. 1995)............................................................................................ 9

*Washington State Grange v. Washington State Rep. Party*,
552 U.S. 442 (2008)......................................................................................................... 8

*Will v. Mich. Dept. of State Police*,
491 U.S. 58 (1989).........................................................................................................10

*Williams ex rel. J. E. v. Reeves*,
954 F.3d 729 (5th Cir. 2020) ........ 10

*Williams v. Dallas Ind. Sch. Dist.*,
480 F.3d 689 (5th Cir. 2007) ........ 14, 15

*Wozniak v. Conry*,
236 F.3d 888 (7th Cir. 2001) ........ 16

*Yale & Annie Slocum v. Livington*,
No. H-11-486, 2012 U.S. Dist. LEXIS 79792, at *4 (S.D. Tex. June. 12, 2012) ........ 1

**Constitutional Provisions & Statutes**

42 U.S.C. § 1983 ........ 8, 9

U.S. Const. amend. XI ........ 9

Tex. Educ. Code § 85.21 ........ 16, 12

Tex. Educ. Code § 51.352(b) ........ 6

Tex. Educ. Code § 51.254 ........ 12

**Rules & Regulations**

Fed. R. Civ. P. 11 ........ 20

Fed. R. Civ. P. 12(b)(1) ........ i, 1, 22

Fed. R. Civ. P. Rule 12(b)(6) ........ i, 18, 19, 22

## PRIORITY DETERMINATION OF SUBJECT MATTER JURISDICTION

Motions to dismiss for lack of subject matter jurisdiction like this one should be considered "before any other challenge because a court must have subject matter jurisdiction before determining the validity of a claim." *Ataman v. Daum, No. 4.23-cv-2637,* 2024 U.S. Dist. LEXIS 171492, at *4 (S.D. Tex. Sep. 23, 2024). "Jurisdiction comes first." *In re GenOn Mid-Atl. Dev., L.L.C.*, 42 F.4th 523, 533 (5th Cir. 2022). Courts have a non-discretionary obligation to consider a challenge to their subject matter jurisdiction. *In re Paxton*, 60 F.4th 252, 256 (5th Cir. 2023). An appropriate jurisdictional challenge like this motion triggers a duty of making further inquiry as to the court's own jurisdiction. *Id.*

"The party asserting jurisdiction constantly bears the burden to show that jurisdiction does in fact exist. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Where the motion to dismiss is based on the complaint alone, the court must decide whether the allegations in the complaint sufficiently state a basis for subject matter jurisdiction." *Ataman*, 2024 U.S. Dist. LEXIS 171492, at *3. When a motion to dismiss for lack of subject matter jurisdiction is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional motion before addressing challenges on the merits. *Yale & Annie Slocum v. Livington*, No. H-11-486, 2012 U.S. Dist. LEXIS 79792, at *4 (S.D. Tex. June. 12, 2012) (citing *Crenshaw-Logal v. City of Abilene*, 436 F. App'x 306, 308 (5th Cir. 2011)); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## BACKGROUND AND RELEVANT FACTS

Plaintiffs here assert facial First Amendment challenges and facial Fourteenth Amendment vagueness challenges directed specifically and only at Policies 08.01 and 12.01 (the "Challenged Policies") of The Texas A & M University System ("A&M System").[1] Section 12.01 expressly

[1] The challenged portion of the 13-page A&M System Policy 08.01 (Civil Rights Protection and Compliance) is quite brief. Subsection 2.1b, quoted at Complaint ¶ 88, provides in relevant part:

> No system academic course will advocate race or gender ideology, or topics related to sexual orientation or gender identity.1 Upon prior written approval of the member CEO after review of the course and relevant course materials, specific non-core curriculum or graduate courses in some disciplines may teach race or gender ideology, or topics related to sexual orientation or gender identity. Such approval may be granted in limited circumstances upon

protects the academic freedom of A&M System university faculty members.[2]

The Supreme Court and the Fifth Circuit have repeatedly warned that such facial challenges are "disfavored" and "hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723, 724 (2024); *La Union de Pueblo Entero v. Abbott*, 167 F.4th 743 (5th Cir. 2026); *Voting for America v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013). "Facial challenges too often degenerate into conjecture rather than rulings on concrete controversies." *La Union*, 167 F.4th at 754. "Shoddy hypothetical analysis is not what our federal system requires." *Id.* Courts have a duty to use judicial restraint to construe challenged provisions to avoid constitutional conflict wherever possible. *Voting for America*, 732 F.3d at 387.

Plaintiffs in their prolix 68-page Complaint do not allege that any Defendants have imposed (or even threatened) any employment, disciplinary, or other concrete or particularized consequences against any Plaintiffs pursuant to the Challenged Policies. Thus, the Complaint does not allege any actual enforcement by Defendants of the Challenged Policies against any Plaintiff.

---

demonstration of a necessary educational purpose.

"Gender ideology" is defined in A&M System Policy 08.01 to mean "a concept that self-assessed gender identity should replace the biological category of sex or that biological sex has less value or legitimacy than self-assessed gender identity." "Race ideology" is defined in A&M System Policy 08.01 to mean "a concept that attempts to shame a particular race or ethnicity, accuse them of being oppressors in a racial hierarchy or conspiracy, ascribe to them less value as contributors to society and public discourse because of the race or ethnicity, or assign them intrinsic guilt based on actions of their presumed ancestors or relatives in other areas of the world. This also includes course content that promotes activism on issues related to race or ethnicity, rather than academic instruction." Complaint ¶¶ 80,81.

[2] A&M System Policy 12.01 specifically protects academic freedom. Section 1 of Policy 12.01 provides:

1. ACADEMIC FREEDOM

1.1 Institutions of higher education exist for the common good. The common good depends upon an uninhibited search for truth and its open expression. Hence, it is essential that each faculty member be free to pursue scholarly inquiry and to voice and publish individual conclusions concerning the significance of evidence that the faculty member considers relevant. Each faculty member must be free from the corrosive fear that others inside or outside the academic community, because their vision may differ, may threaten the faculty member's professional career or the material benefits accruing from it.

1.2 Each faculty member is entitled to full freedom in the classroom in discussing the subject that the faculty member teaches, but a faculty member will not introduce a controversial matter than has no relation to the classroom subject or teach material that is inconsistent with the approved syllabus for the course. Each faculty member is also a citizen of the nation, state, and community; and when speaking, writing, or acting as such, must be free from institutional censorship or discipline, subject to academic responsibility. In such instances, the faculty members should clearly state that the faculty member is not speaking for the system academic institution.

Plaintiffs' only arguable allegation of injury is their assertion that individual Plaintiffs generally have been "chilled" in their classroom teaching at A&M System institutions; "censored" in their classroom teaching at A&M System institutions; or have not been allowed to teach a course at an A&M System institution that they previously taught.

Plaintiffs also do not allege that any Defendant has any connection with enforcement of the Challenged Policies. Plaintiffs allege no enforcement or threatened enforcement of the Challenged Policies against any of them by anyone, and certainly none by any Defendant. The implementation of the Challenged Policies through a review of course syllabi as described in the Complaint at ¶ 7, was undertaken by administration officials and academic departments, rather than by any Defendants.

## ISSUES PRESENTED

I. Plaintiffs lack standing.

II. Plaintiffs' claims are not ripe.

III. Defendants are entitled to sovereign immunity.

IV. Plaintiffs failed to state a valid claim.

A. First Amendment Claims.

B. Fourteenth Amendment Vagueness Claims.

## I. PLAINTIFFS LACK STANDING

Standing is a bedrock Article III requirement for a "case or controversy" over which federal courts may have subject matter jurisdiction. Article III requires that "the plaintiffs have a personal stake in the alleged dispute." *United States v. Texas*, 173 F.4th 660, 662 (5th Cir. 2026).

Plaintiff American Association of University Professors ("AAUP") is a labor union. Complaint ¶ 28. It represents a small percentage of A&M System university faculty.[3] *See* Complaint ¶ 28.

AAUP does not claim any such personal stake in this case itself, as it is not subject to or regulated by the Challenged Policies. It claims no legal injury to itself in the Complaint. Instead,

---

[3] Plaintiffs allege that the A&M System has over 4000 faculty, Complaint ¶ 19, but Plaintiff AAUP alleges it has only "hundreds of members spread across the Texas A & M University System." Complaint ¶ 28.

Plaintiff AAUP must rely solely on the judge-made doctrine of "associational standing."[4] But establishing associational standing is no easy task. To do so, "a plaintiff organization must show that a specific member has suffered an injury traceable to the challenged provision." *La Pueblo Entero v. Abbott*, No. 25-50246, 2026 U.S. App. LEXIS 24371 at *6–7 (5th Cir. Aug. 12, 2026). What's more, "[w]hen an organization seeks injunctive relief, the member who alleges the injury must show a 'substantial risk' that future injury will occur. *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotation omitted). Like all injuries in fact sufficient to show standing, the injury to the plaintiff must be "concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

The individual Plaintiffs all fail to establish these requirements. Plaintiffs failed to provide in their Complaint the required specific allegations that they have suffered any concrete and particularized injury in fact traceable to enforcement of the Challenged Policies by any Defendants. Plaintiffs make no allegations that any of them have been terminated, disciplined, or otherwise injured in a "concrete and particularized, actual or imminent" way. *See id.* Plaintiffs also do not allege in the Complaint that any Article III injury in fact is imminent or certainly impending. *See Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013) ("threatened injury must be certainly impending to constitute injury in fact"; "allegations of possible future injury are not sufficient").

Plaintiffs only allege that they have been denied permission by Texas A&M University or Tarleton State University to teach particular courses or course materials or content at A&M System universities;[5] that they experience "confusion" or are "unclear" or "unsure" as to the application of the Challenged Policies in specific situations; and that they "fear" that teaching certain materials in A&M System university classes "could violate, or could be accused of

[4] That doctrine has been convincingly criticized by Justice Thomas. *See FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 397–405 (2024) (Thomas, J. concurring). Defendants assert, along with Justice Thomas, that "associational standing" is not based in the Constitution and therefore Article III subject matter jurisdiction is absent in this case as to Plaintiff AAUP. However, Defendants acknowledge that this doctrine is currently supported by Supreme Court and Fifth Circuit precedent.

5 E.g., Complaint ¶ 31-34. These allegations are factually inaccurate but must be accepted as true for purposes of this Motion.

violating" the Challenged Policies.

Such subjective, abstract, and intangible claimed injuries are insufficient for standing. Subjective fears for which there is no objective basis have repeatedly been found insufficient for standing. *See e.g., Clapper*, 568 U.S. at 408 (2013); *Kirkland v. FBI*, No. SA-26-CV-01836-XR, 2026 U.S. Dist. LEXIS 147012, at *4, 7 (W.D. Tex. July 2, 2026) (fear of surveillance); *Figueroa v. United States*, No. 4:25-cv-1139, 2025 U.S. Dist. LEXIS 274026, at *7–8 (S.D. Tex. Dec. 11, 2025) (fear of deportation); *Moore v. Bryant*, 205 F. Supp. 3d 834, 852 (S.D. Miss. 2016), *aff'd*, 853 F.3d 245 (5th Cir. 2017) (fear of racial violence); *Crenshaw-Logal v. City of Abilene*, 436 F. App'x 306, 308–09 (5th Cir. 2011) (subjective chill resulting from fear of governmental use of communications stored on computer).

Similarly, although a subjective "chill" or self-censorship preventing exercise of First Amendment rights[6] may in some cases provide standing, "[t]he chilling effect must have an objective basis." *La Pueblo Entero v. Abbott,* 151 F.4th 273, 286–87 (5th Cir. 2025) (quoting *Tex. State LULAC v. Elfant*, 52 F.4th 248, 256 (5th Cir. 2022)). And as the Supreme Court has explained, because "federal courts do not render advisory opinions," "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

Here, Plaintiffs allege zero disciplinary actions or proceedings to enforce the Challenged Policies against any of them; thus, "any chill is purely subjective and therefore inadequate to show injury." *La Pueblo Entero,* 151 F.4th at 286–87. Moreover, when an organization or its members seek injunctive relief, "the member who alleges the injury must show a substantial risk that future injury will occur." *La Pueblo Entero v. Abbott*, No. 25-50246, 2026 U.S. App. LEXIS 24371 at *6–7 (5th Cir. Aug. 12, 2026). The Plaintiffs make no such allegations in the Complaint. Standing (and subject matter jurisdiction) are therefore absent for this additional reason.

---

[6] Any claim by Plaintiffs to standing based on alleged "chilling" of First Amendment rights is also precluded because Plaintiffs have no First Amendment rights in performing their duties of teaching A&M System university courses; those courses are government speech not subject to First Amendment challenge. *See* Section IV(A).

As novel and unsupported as their First Amendment claims are, Plaintiffs may strongly and sincerely disagree with the wisdom of the Challenged Policies on ideological or pedagogical grounds. Such sincere disagreements between university administration and some faculty have always occurred and always will occur. But they are no basis for legal standing. It is well established that "sincere legal, moral, ideological, and policy objections" do not amount to legal injury in fact or to standing to sue. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 386 (2024). Plaintiffs failed to establish standing because they have not suffered any injury in fact.

Plaintiffs further failed to meet the requirement of causation or traceability for standing. To meet this requirement, Plaintiffs would have had to show that they not only suffered injury in fact, but that the injury in fact was caused by or traceable to the actions of the Defendants challenged in the Complaint. Plaintiffs did not do so.

To the contrary, the Complaint describes Challenged Polices adopted by the A&M System Board of Regents for implementation at A&M System institutions by the administrations of those institutions.[7] The actual implementation of the Challenged Policies was not carried out by Defendants, but by numerous officials within the administrations of Texas A&M University or Tarleton State University who are not defendants in this case. And if there ever is any enforcement of the Challenged Policies against any Plaintiffs, it would not be by any Defendants but by individuals within the administrations of universities within the A&M System. Thus, Plaintiffs have sued the wrong parties.

Whatever "injuries" Plaintiffs claim to have suffered from the implementation of the Challenged Policies, they are *not* injuries to Plaintiffs resulting from any specific actions of any Defendants in this case, but from actions of unnamed non-party university officials. To provide standing, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *A&R Eng. & Testing,*

[7] This policymaking role is just what Texas law prescribes: "The governing board of an institution of higher education shall provide the policy direction for each institution of higher education under its management and control." Tex. Educ. Code § 51.352(b). But it is not an *enforcement* role.

*Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023).

Plaintiffs therefore fail to allege injuries traceable to any action of any defendants and fail to establish standing. "Traceability is particularly difficult to show where the proffered chain of causation turns on speculative future decisions regarding whether and to what extent it will bring enforcement actions in hypothetical cases." *A&R*, 72 F.4th at 690. For all these reasons, Plaintiffs have failed to carry their burden to show standing to sue any of the named defendants. The court therefore lacks subject matter jurisdiction and should dismiss this action.

## II. PLAINTIFFS' CLAIMS ARE NOT RIPE.

"Courts do not decide constitutional cases in the abstract. Nor is constitutional adjudication an exercise in imagination. The role of federal courts "is more modest—and more demanding: to resolve concrete disputes grounded in real facts and an actual record." *Roake v. Brumley*, 170 F.4th 292, 297 (5th Cir. 2026) (en banc). In *Roake*, the Fifth Circuit concluded that the facial constitutional claims before it were not ripe for adjudication, and that the preliminary injunction issued by the district court had to be vacated. It thereby enforced the Article III requirement that issues decided by federal courts "must be ripe—not dependent on contingent future events that may not occur as anticipated or may not occur at all." *Id.* (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam) and *Texas v. United States*, 523 U.S. 296, 300 (1998)).

The same conclusion is proper here. Plaintiffs assert a facial challenge against the Challenged Policies that, according to their Complaint, have not been enforced by any Defendants against them or anyone else. "The ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. . . . A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). A facial challenge especially requires full development of a factual record after *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024), because, even in a First Amendment challenge, the plaintiff must still demonstrate that "a substantial number of applications are unconstitutional, judged in reference to the statute's plainly legitimate sweep," and "the court must assess the full scope of a law's applications" before

adjudicating such a challenge. *Id.* at 717–19, 724–25.

"That assessment requires a thoroughly developed factual record." *Dier v. Landry*, No. 2:24-cv-2306, 2026 U.S. Dist. LEXIS 88339, at *17–18 (E.D. La. Apr. 22, 2026) (citing *Washington State Grange v. Washington State Rep. Party*, 552 U.S. 442, 450–51 (2008)). In *Moody*, the Fifth Circuit emphasized on remand the need for a thorough factual record. *NetChoice, LLC v. Paxton*, 121 F.4th 494, 497–99 (5th Cir. 2024). There is not and cannot be such a record in this case because the Challenged Policies have not been enforced or applied by Defendants to any Plaintiffs or even non-plaintiffs. *Cf. Little v. Llano County*, 138 F.4th 834, 837 (5th Cir. 2025) (applying uncertain First Amendment standard to thousands of library books would be "a nightmare").

This case would require a court to speculate as to how the Plaintiffs and thousands of other faculty members in TAMUS universities who are not parties to this case might conduct classroom or coursework activities that potentially violate the Challenged Policies. Then the court would have to determine whether those hypothetical classroom/coursework activities would violate those Policies or whether such activities would *not* violate those Policies because of A&M System Policy Section 12.01's clear and explicit authorization for classroom "full freedom of discussion." Next, a court would have to determine which of the conjectured activities would be unconstitutional and which would be constitutional. Then, under *Moody*, a court would have to somehow assess whether "a substantial number of applications are unconstitutional, judged in reference to the [Policies'] plainly legitimate sweep."

Such a task is indeed "abstract and hypothetical" at this point. What Plaintiffs seek here is "premature adjudication," which would entangle the Court in abstract disagreements. The issues presented by this facial pre-enforcement challenge are not ripe for adjudication. The Court lacks subject matter jurisdiction for this reason and should dismiss this case.

### III. DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY.

Plaintiffs sue Defendants pursuant to 42 U.S.C. § 1983. Complaint at ¶ 24. Plaintiffs sue the Defendants solely in their official capacities as members of the A&M System Board of Regents. Complaint at ¶ 36. Plaintiffs describe the A&M System Board of Regents as "an arm of the state,

established by statute and charged with governing the University System." Complaint at ¶ 35.[8]

Accordingly, all Defendants are entitled to and hereby assert state sovereign immunity from this suit, as well as any liability in this suit. "When a defendant is protected by sovereign immunity, federal courts lack subject matter jurisdiction over the lawsuit." *Somers v. UT MD Anderson Cancer Ctr.,* No. 4:19-CV-390, 2019 U.S. Dist. LEXIS 240018, at *4 (S.D. Tex. June 28, 2019) (citing *Warnoch v. Pecos*, 88 F.3d 341, 343 (5th Cir. 1995)); *see also* U.S. Const. amend. XI.

"Public universities are typically considered to be arms of the state and therefore entitled to sovereign immunity." *Id.* The Texas A&M University System is an agency of the State of Texas and entitled to sovereign immunity. *Sullivan v. Tex. A&M Univ. System*, 986 F.3d 593, 595 (5th Cir. 2021). Similarly, public universities like Texas A&M University System and their agents and employees are entitled to immunity under the Eleventh Amendment. *See Chowdhury v. University of Houston*, No. 4:25-cv-467, 2026 U.S. Dist. LEXIS 56253, at *6–7 (S.D. Tex. Mar. 18, 2026). Defendants, as agents of the State of Texas, are entitled to Eleventh Amendment immunity unless that immunity has been waived. *Canada Hockey LLC v. Marquardt*, No. 4:17-CV-00181, 2026 U.S. Dist. LEXIS 111887, at *2 (S.D. Tex. Feb. 13, 2026).

Neither the State of Texas nor any Defendant has waived immunity in connection with this case. Plaintiffs make no claim of waiver of immunity by any Defendant. Plaintiff alleges claims under 42 U.S.C. § 1983, but Congress did not abrogate state sovereign immunity with that statute. *See, e.g., Doe v. Univ. of Tex. at S.A.*, No. SA-25-CA-01140, 2026 U.S. Dist. LEXIS 34424, at *13 (W.D. Tex. Feb. 19, 2026). The State of Texas and Defendants also have not consented to this suit, and Plaintiffs do not allege any such consent to suit.

In *Chowdhury v. University of Houston*, No. 4:25-cv-467, 2026 U.S. Dist. LEXIS 56253, at *2–3 (S.D. Tex. Mar. 18, 2026), a graduate student sued the university and its Vice Chancellor pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment to the United

[8] Suits against Defendants in their official capacities are regarded as suits against the State. *Rylander v. Brown*, No. 4:25-CV-2079, 2025 U.S. Dist. LEXIS 154936, at *3–4, (S.D. Tex. Aug. 6, 2025); *see, e.g., Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Raj v. La. State Univ.*, 714 F. 3d 322, 328 (5th Cir. 2013).

States Constitution, as well as of federal statutes. The Court found that the Fourteenth Amendment claims could not be asserted directly but that "Section 1983 is the proper vehicle for a claim alleging that a state official has violated the Plaintiff's rights under the Fourteenth Amendment." *Id.* at *7 (quoting *Planned Parenthood of Houston & SE Texas v. Sanchez,* 480 F.3d 734, 738 (5th Cir. 2007)).

The Court noted that "Section 1983 does not abrogate Eleventh Amendment immunity". *Id.* (quoting *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999)); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). And the Supreme Court established in *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989), that state officials sued in their official capacities are not "persons" subject to liability under Section 1983. *Chowdhury* at *8. The Court concluded that the University Vice Chancellor sued in his official capacity was "entitled to the protection of the Eleventh Amendment" and dismissed the claims against him with prejudice." *Id.* at **8, 14.

The same principles apply to Plaintiffs' Section 1983 constitutional claims here against Defendants in their official capacities. They are not "persons" subject to liability under Section 1983 and are entitled to the protection of the Eleventh Amendment. Accordingly, the Court lacks subject matter jurisdiction of this action by reason of state sovereign immunity and the Eleventh Amendment, and this case should be dismissed.

Plaintiffs cannot invoke the "narrow" exception recognized in *Ex parte Young*, 209 U.S. 123 (1908). Although *Ex parte Young* established an exception to Eleventh Amendment sovereign immunity, it does not apply to Defendants here. The *Ex parte* Young exception is a legal fiction that permits private parties to bring suit for declaratory or injunctive relief against individual state officials engaged in *ongoing* violations of federal law. *See Ex parte Young*, 209 U.S. at 155–56; *Raj v. La. State Univ*., 714 F.3d 322, 328 (5th Cir. 2013); *Hooks v. Office of Att. Gen. of Texas*, No. 4:25-cv-2667, 2026 U.S. Dist. LEXIS 47585, at *8 (S.D. Tex. Mar. 9, 2026) (citing *Williams ex rel. J. E. v. Reeves*, 954 F.3d 729, 735 (5th Cir. 2020)). But the only specific acts by Defendants even alleged in the Complaint are the Board of Regents' actions adopting the Challenged Policies on November 13 and December 18, 2025. *See* Complaint ¶ 50.

Moreover, the *Ex parte* Young exception can apply only when the state official defendant has a particular duty to *enforce* a challenged statute, ordinance, or policy—not merely a general duty to see that the law is implemented. *TEXAS ALLIANCE FOR RETIRED AMERICANS v. SCOTT*, 28 F.4th 669, 672 (5th Cir. 2022). Here, the Challenged Policies have not been enforced against any Plaintiffs by anyone. No Plaintiffs claim they have been subjected to termination, disciplinary proceedings, or any other tangible adverse action by anyone.

Thus, the *Ex parte* Young exception is inapplicable in this case for several independently sufficient reasons. First, the Challenged Policies are enforceable by administration officials at A&M System universities, not by the Defendant members of the A&M System Board of Regents. The Defendants are analogous to members of the Texas Legislature, who make laws that are then enforced by state officials in the Executive Branch of Texas government. If a plaintiff wishes to challenge a law as unconstitutional, the plaintiff must sue the executive officials charged with *enforcing* the law, not the members of the Texas Legislature who *enacted* the law.

Here, the Defendants have adopted the Challenged Policies, but it is the officials in the administration of the 12 universities within the A&M System that have the power to enforce those policies.[9] It is the twelve universities who are the employers of the individual Plaintiffs, and any possible enforcement action relating to the employment relationship would be taken by the employer university and not by the Defendants.

Moreover, the Challenged Policies were adopted by the A&M System Board of Regents in November 2025 and modified in December 2025. Complaint ¶ 50. And Plaintiffs do not allege any ongoing actions by any Defendants thereafter. Thus, Plaintiffs do not allege any "*ongoing* violations of federal law" by any Defendants that could fit within the *Ex parte* Young exception. The syllabi review of which Plaintiffs complain was allegedly effectuated in 2026 by university administrators

[9] Plaintiffs make an unconvincing argument in the Complaint that the Board of Regents "enforces" the Challenged Policies merely because the A&M System Board of Regents allegedly "controls the officials who carry out the [Challenged Policies]." Complaint ¶ 52. But Plaintiffs allege no instance in which any Defendant has actually directed a university administration official to take any specific enforcement action as to any Plaintiff and can only argue that the university officials "serve at the Board's pleasure" and "report to it through the chancellor." Id.

and faculty at Texas A&M University, Tarleton State University and the other ten universities in the A&M System—not by Defendants—in applying the Challenged Policies adopted in 2025.

Plaintiffs do not allege in their Complaint that any of the Defendants took, threatened to take, or will soon take any future actions that will "imminently" injure any of Plaintiffs. Plaintiffs do not allege any Defendants are about to announce new policies, or take any other future or ongoing action, that might conceivably fit within the *Ex parte Young* exception. Accordingly, Defendants are entitled to sovereign immunity from this suit, which is barred by the Eleventh Amendment. The Court should therefore dismiss this case for lack of subject matter jurisdiction.

## IV. PLAINTIFFS FAILED TO STATE A VALID CLAIM.

### A. Plaintiffs' Facial First Amendment Claim

Plaintiffs' facial First Amendment claim in this action[10] is based on a central legal misconception and error. Plaintiffs assert and apparently believe that the First Amendment to the United States Constitution gives them the right to determine the curriculum that they will teach as government employees in classes in state universities and other institutions like the TAMUS. But under Texas law and U.S Supreme Court precedent, the right to determine the content of courses taught by a state university belongs to the state university itself.[11]

As stated in *Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring) the "four essential freedoms of a university" are to determine "who may teach, *what may be taught, how it shall be taught*, and who may be admitted to study" (emphasis added). The First Amendment right to determine curriculum and the content of classroom instruction does not belong to the faculty employees that state universities pay to teach. *Urofsky v. Gilmore*, 216 F.3d 401, 409 (4th Cir. 2000). Rather, it belongs to the state universities that determine the course

[10] Although Plaintiffs include in their Complaint factual allegations about how the Challenged Policies supposedly affect each individual Plaintiff, their claims are facial, rather than as-applied claims. This is because the relief they seek is to declare the Challenged Policies "unconstitutional on [their] face" and to enjoin implementation or enforcement of the Challenged Policies in their entirety and not only as to Plaintiffs. See Complaint at pp.67-68.

[11] Texas law directs that boards of state university systems "shall regulate the course of study" and states: "The final decision-making authority regarding an institution of higher education's degree programs and curricula belongs to the institution. The institution shall make decisions on those matters under the direction of the institution's governing board." Tex. Educ. Code §§ 85.21, 51.254.

content their students need to learn and should be taught. *Id.*

This is not to say that the individual Plaintiffs have no First Amendment rights. They indeed have extensive First Amendment rights as citizens, and they do not shed them when they choose to be government employees. But they have no constitutional right to determine what must be taught in the curricula of public universities.

The Plaintiffs may be free to express themselves in scholarly research, scholarly writing, academic conferences, and in discussions and exchanges of ideas with students, other faculty, and in a wide variety of other forums. Defendants have taken no action whatsoever to restrict those rights in any way in the Challenged Policies, and Plaintiffs do not allege otherwise. But it is the state university—the public employer of the individual Plaintiffs—that has the right to determine the courses that will be taught at the university, and the content of those courses: as stated in *Sweezy*, "what may be taught [and] how it shall be taught."

In reaching these results, courts have generally employed two main conceptual frameworks. The first is the "government speech" doctrine, as explained in *Garcetti v. Ceballos,* 547 U.S. 410 (2006).12 *Garcetti* sets forth the basic principles that govern the First Amendment rights of public employees: "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." 547 U.S. at 418. That's because "Government employers, like private employers, need a significant degree of control over their employees' words and actions." *Id.* If it weren't for that control, "there would be little chance for

[12] As the Supreme Court has long recognized, "the Free Speech Clause . . . does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). Decisions that concern the content of government speech may not be challenged as violative of the First Amendment Free Exercise Clause. *Johanns v. Livestock Marketing Assn.*, 544 U.S. 550, 553, 125 S. Ct. 2055, 161 L. Ed. 2d 896 (2005) ("[T]he Government's own speech . . . is exempt from First Amendment scrutiny"); *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 139 n.7 (1973) (Stewart, J., concurring) ("Government is not restrained by the First Amendment from controlling its own expression"). A government entity has the right to "speak for itself." *Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 229, 120 S. Ct. 1346, 146 L. Ed. 2d 193 (2000). "[I]t is entitled to say what it wishes," *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995), and to select the views that it wants to express, *see Rust v. Sullivan*, 500 U.S. 173, 194, 111 S. Ct. 1759, 114 L. Ed. 2d 233 (1991); *National Endowment for Arts v. Finley*, 524 U.S. 569, 598, 118 S. Ct. 2168, 141 L. Ed. 2d 500 (1998) (Scalia, J., concurring in judgment) ("It is the very business of government to favor and disfavor points of view").

the effective provision of [the Government's] services."[13] *Id.*

The Supreme Court expressly recognized that public employees have First Amendment rights as citizens to speak out on matters of public concern, but "[held] that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. The Court explained that this common-sense rule "does not prevent [public employees] from participating in public debate." *Id.* at 422.Those employees can still contribute to constitutionally protected "civic discourse." *Id.* But the Constitution "does not invest them with the right to perform their jobs however they see fit." *Id.*

The second conceptual framework courts use to assess cases like this one is drawn from the pre-*Garcetti* Supreme Court's decision in *Pickering v. Bd. of Education*, 391 U.S. 563, 568 (1968). *Pickering* describes a two-step balancing process pursuant to which a public employee's speech is protected by the First Amendment. Courts must consider (a) whether the speech is government speech pursuant to the employee's official duties; and (b) whether the interests of the employee as a citizen in commenting on matters of public concern outweigh the interests of the state as an employer in promoting the efficiency of the services that the state performs through its employees.[14] But application of either the *Garcetti* or *Pickering* frameworks leads to the same result in this case.

The Fifth Circuit has made it clear that there is a threshold question a court should consider: whether the plaintiff's speech allegedly protected by the First Amendment was in his or her role as a "citizen" or "made pursuant to their official duties." *Williams v. Dallas Ind. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007). "Even if the speech is of great social importance, it is not

[13] *Garcetti* also notes that public employees "often occupy trusted positions in society," so when those employees "speak out, they can express views that contravene government policies or impair the proper performance of governmental functions." *Garcetti*, 547 U.S. at 418.

[14] Plaintiffs do not allege in the Complaint that the Challenged Policies have barred them from speaking as "citizens" on any matter of "public concern", so they have failed to allege a claim under the second step of the *Pickering* test. But they cannot meet the first step either, because the Challenged Policies pertain only to government speech.

protected by the First Amendment so long as it was made pursuant to the worker's official duties." *Id.*

This threshold question—whether the allegedly protected speech was made as part of the public employee's official duties—is a question of law to be resolved by the court. *Rodriguez v. City of Corpus Christi*, 687 F. App'x 386, 389 (5th Cir. 2017) (citing *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015)). In making that determination, the Fifth Circuit has held that a public employee's speech is made pursuant to his official duties when the speech is made in the course of performing his employment, whether or not the speech was specifically demanded of the employee. *Anderson v. Valdez*, 845 F.3d 580 (5th Cir. 2016); *Richmond v. Coastal Bend Coll. Dist.*, 883 F. Supp. 2d 705, 715–16 (S.D. Tex. 2012).

The individual Plaintiffs here are teachers. A central portion of their official duties is the provision of classroom instruction and assignment of coursework to students of the A&M System universities. There can be no serious dispute that what the individual Plaintiffs say or assign to students as part of their classroom instruction and coursework is "speech made in the course of performing their employment."[15]

Accordingly, whether analyzed under the *Garcetti* or *Pickering* frameworks, the same result obtains: The individual Plaintiffs speak as government employees in their classroom instruction and coursework. They have no First Amendment rights to override the curriculum choices made by the Defendants or the A&M System universities.

This is a commonsense result. Plaintiffs' members are undeniably public employees. *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019) ("University professors are public employees.").[16] The central mission of their employer, the A&M System universities and institutions, is to teach university students through a program of courses and classwork. Indeed,

[15] *See Dolce v.* Connecticut Cent. Ch. Dist., No. 25-1197, 2026 U.S. App. LEXIS 26560, at *15 (2d Cir. Aug. 31, 2026) (teachers' classroom decorations such as pride flag were not protected by First Amendment because they constituted government speech as part of the teachers' classroom duties).

[16] The Garcetti Court noted that the case before it did not involve an academic setting and therefore reserved the question of whether "the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching." 547 U.S. at 425. This case thus presents the question reserved in *Garcetti*.

this mission is mandated by Texas law. *See* Tex. Educ. Code § 85.21. Thus, the work of A&M System faculty members like the individual Plaintiffs in carrying out that central mission in courses and classwork is classic government speech.

To whatever extent the First Amendment protects "academic freedom," that "right inheres in the University, not in individual professors." *Urofsky*, 216 F.3d at 409. A&M System faculty indeed have First Amendment rights. They are free outside the classroom to disagree with, criticize, and denounce Defendants, the A&M System, and the syllabi of the courses they are paid to teach. But the First Amendment rights of the individual Plaintiffs do not extend to determining the content of the courses taught at A&M System universities and other institutions.

These principles were recently summarized well by Judge Easterbrook in his concurring opinion in *McDonald v. Trustees of Indiana University*. There, Judge Easterbrook explained—as is the case here—that "Plaintiffs suppose that professors hold rights against universities about what shall be taught." No. 25-2366, 2026 U.S. App. LEXIS 24504, at *26–27 (7th Cir. Aug. 13, 2026) (Easterbrook, J., concurring). But this is wrong, Judge Easterbrook explained, because "academic freedom belongs to the university." *Id.* "It is the business *of a university* to provide that atmosphere which is most conducive to speculation, experiment and creation," so it is for the university "to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study." *Id.* (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957) (Frankfurter & Harlan, JJ., concurring)). A university has the right to insist that professors provide the sort of education that the school promises to students but can deliver only through agents. *Id.*; *see also Kilborn v. Amiridis*, 135 F.4th 1100 (7th Cir. 2025).

Other courts have reached the same result for similar reasons. *See, e.g.*, *Wozniak v. Conry*, 236 F.3d 888, 891 (7th Cir. 2001) (reasoning that whatever right to academic freedom existed belonged to the university, not the individual professor because "it is the [u]university's name, not the [professor]'s that appears on the diploma; the [u]niversity, not [the professor] who certifies to employers and graduate schools a student's successful completion of a course of study."); *Stronach v. Va. State Univ.*, No. 3:07CV646-HEH, 2008 U.S. Dist. LEXIS 2914, at *7–9 (E.D. Va. Jan. 15,

2008) (academic freedom is "the *university's* right, and not the *professor's* right"); *Rice v. Schell*, 831 F. Supp. 3d 647, 659 (S.D. Ohio 2026) (same).

Importantly, then Judge Samuel Alito held for the Third Circuit:

> A public university professor does not have a First Amendment right to decide what will be taught in the classroom. . . . In sum, caselaw from the Supreme Court and this Court on academic freedom and the First Amendment compel the conclusion that Edwards does not have a constitutional right to choose curriculum materials in contravention of the University's dictates.

*Edwards v. Cal. Univ. of Pa.*, 156 F.3d 488, 491–92 (3d Cir. 1998).

Likewise, the Fifth Circuit unequivocally upholds the principle that government speech is not subject to challenge on the basis of the Free Speech Clause of the First Amendment. In *Little v. Llano County*, patrons of a county library sued the librarian and the library board members in their official capacities, alleging that they violated the First Amendment by removing from the library seventeen books with racial and sexual themes. 138 F.4th 834, 838–39 (5th Cir. 2025) (en banc). The Fifth Circuit reversed a preliminary injunction and ordered that the plaintiffs' Free Speech claims be dismissed "because a library's collection decisions are government speech and therefore not subject to Free Speech challenge." *Id.* at 865–66. The Court explained that: "Many precedents teach that someone engages in expressive activity by curating and presenting a collection of third-party speech." *Id.* The Court provided many such examples: "editors of a poetry compilation choosing among poems, or a newspaper choosing which editorials to run, or a television station choosing which programs to air." *Id.* And just as private parties sometimes engage in speech by curating third party speech: "So do governments." *Id.*

In the same way, a library expresses itself by deciding how to shape its collection. As one court put it: "With respect to the public library, the government speaks through its selection of which books to put on the shelves and which books to exclude." *People for the Ethical Treatment of Animals v. Gittens*, 414 F.3d 23, 28 (D. C. Cir. 2005). What the library is saying is: "We think these books are worth reading." *Id.* at 837.

Just like the Llano County public library, the A&M System and other state universities

engage in government speech when they select both the courses that will be taught to their students and the content of those courses. Their decisions as to what will be in the classes and coursework they choose to offer to their students—and what will not be offered—are not subject to First Amendment challenge. Those choices need not be "viewpoint neutral", just as the Declaration of Independence, the Pledge of Allegiance, and the United States Constitution are not viewpoint neutral. Similarly, the First Amendment "prior restraint" doctrine does not apply to government speech. *E.g., Milw. Cty. Sheriff's Dept. v. Clarke*, 574 F.3d 370, 382 (7th Cir. 2009); *Bartello v. City of Sunbury*, No. 4:13-CV-1340, 2013 U.S. Dist. LEXIS 183949, at *37 (M.D. Pa. Sep. 25, 2013).

A&M System faculty are free to agree or disagree with the government speech choices that Defendants and A&M System university officials make, but Plaintiffs have no First Amendment right to enjoin those choices or to substitute instruction or coursework that they believe would be preferable.

The same result is strongly indicated by the Fifth Circuit's decision in *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005). There, a textbook author and students claimed that the school textbook decisions by the Texas State Board of Education engaged in "viewpoint discrimination" and thereby violated their First Amendment rights by not selecting a textbook with certain environmental content. *Id.* at 610. The district court dismissed their lawsuit on a Rule 12(b)(6) motion, and the Fifth Circuit affirmed the dismissal because "[a]ny discussion of the constitutionality of a state's decision to reject a textbook for its public schools must begin with the recognition that the states enjoy broad discretionary powers in the field of public education." *Id.* Importantly, "[c]entral among these discretionary powers is the authority to establish public school curricula which accomplishes the states' educational objectives." *Id. See also Kirkland v. Northside Ind. Sch. Dist.*, 890 F.2d 794, 800 (5th Cir. 1989) ("academic freedom" does not give teachers control of public-school curriculum in grades K-12).

Indeed, even though *Chiras* dealt with textbook selection, the Fifth Circuit emphasized this language from the Supreme Court's decision in *Rosenberger v. Rector and Visitors of the Univ. of Va.,* "When the University determines the content of the education it provides, *it is the University*

*speaking*, and we have permitted the government to regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message." 515 U.S. 819, 833 (1995) (emphasis added).

The Fifth Circuit added that: "the government, *including its educational institutions*, has the discretion to promote policies and values of its own choosing free from forum analysis or the viewpoint-neutrality requirement." *Chiras*, 432 F.3d at 613 (emphasis added). Thus, the Court concluded, "when the SBOE devises the state curriculum for Texas and selects the textbook with which teachers will teach to the students, it is the state speaking." *Id.* at 614.[17]

So, too, it was the state speaking when Defendants adopted the Challenged Policies. Plaintiffs' central claim is that faculty members like the individual Plaintiffs have First Amendment rights to include in A&M System university classes, coursework, and course materials content that A&M System officials have determined to exclude from those courses. But Plaintiffs' claim—and indeed the entire legal theory behind their lawsuit—is wrong as a matter of constitutional law.[18] Therefore, the Court should dismiss Plaintiffs' First Amendment claim pursuant to Rule 12(b)(6).

**B. Fourteenth Amendment Facial Vagueness Claims.**

Plaintiffs allege that the Challenged Policies are facially unconstitutionally vague because their language "confuses" the individual Plaintiffs about how they must follow or implement those Policies. However, these allegations are insufficient to state a claim on which relief may be granted.

---

[17] Although this is the law in the Fifth Circuit, other circuits have sometimes reached apparently inconsistent results. For example, a recent 2-1 decision in *Pernell v. Fla. Bd. of Govs.*, 181 F.4th 1135 (11th Cir. July 7, 2026), invalidated a Florida statute that, per the Court, "legislated a broad set of speech restrictions banning certain viewpoints relating to race, color, sex and national origin." *Id.* at 1144. But even there, the majority acknowledged that "universities have control over their own curriculum," noting that "it is the university's view of the curriculum that is privileged, not the legislature's". *Id.* at *1154. The majority also emphasized that the case before it involved a "speech ban enacted by political authorities—the Florida legislature and its Governor—who are not the professors' employers and who exercise no direct supervision or control over their employment." *Id.* at 1152. These circumstances in *Pernell* thus easily distinguish it from this case.

[18] The First Amendment is properly interpreted by reference to its historical context, and in light of what those who drafted and ratified it in the late 1700s intended. *See Nathan v. Alamo Heights Ind. Sch. Dist.*, 173 F.4th 576, 593-602 (5th Cir. 2026). No concept of legal rights of academic freedom existed at that time; indeed, the first public college in America (the University of North Carolina) enrolled its first students in 1795, years *after* the First Amendment was ratified. Thus, Plaintiffs here attempt to create First Amendment rights for themselves that have no historical basis in the Founding era meaning or understanding of the First Amendment. They effectively are asking the Court to re-write the Constitution and find First Amendment rights that the Founders did not intend.

A criminal law is unconstitutionally vague if it either "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or authorizes or authorizes or even encourages arbitrary and discriminatory enforcement." *Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020). But the Challenged Policies are not criminal laws. They impose no legal consequences on Plaintiffs' members, or anyone else. Accordingly, the Challenged Policies are not subject to Fourteenth Amendment Due Process scrutiny at all.

The Fourteenth Amendment prohibits deprivations of "life, liberty, or property without due process of law. But the Challenged Policies have deprived no one (and certainly no Plaintiffs) of any constitutionally protected "life, liberty, or property." They prescribe no criminal or civil penalties, and Plaintiffs have alleged no concrete and particularized injuries they have suffered because of the Challenged Policies.

To prevail on a void-for-vagueness challenge in the Fifth Circuit, a plaintiff must "establish that the law is vague, 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *La Union de Pueblo Entero v. Abbott*, 167 F.4th 743, 756 (5th Cir. 2026) (*Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). Under this standard, a plaintiff "bears the weighty burden of demonstrating that the law is "impermissibly vague in all of its applications." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023) (quoting *Home Depot, Inc. v. Guste*, 773 F.2d 616, 627 (5th Cir. 1985)).

Moreover, a significantly more demanding standard applies to vagueness challenges to a civil statute, wherein a law is only void for vagueness "if it 'commands compliance in terms so vague and indefinite as really to be no rule or standard at all' or if it is 'substantially incomprehensible.'" *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493 (5th Cir. 2001) (quoting *U.S. v. Clinical Leasing Serv., Inc.*, 925 F.2d 120, n.2 (5th Cir. 1991)).

Plaintiffs do not allege that the Challenged Policies are "no rule or standard at all" or that they are "substantially uncomprehensible." Nor could Plaintiffs do so consistently with Fed. R. Civ. P. 11. While any law or policy is subject to questions of interpretation at the edges, the

Challenged Policies are reasonably clear and contain definitions of the key terms of "race ideology" and "gender ideology" to provide additional clarity. *See supra* note 1.

The Tenth Circuit Court of Appeals recently rejected a vagueness argument similar to that asserted by Plaintiffs here. In *Black Emergency Response Team v. Drummond, Nos. 24-6139, 24-6140, 24-6141,* 2026 U.S. App. LEXIS 27669, (10th Cir. Sep. 9, 2026), the plaintiffs challenged, as unconstitutionally vague, a statute providing that Oklahoma public K-12 schools could not "require or make part of a course" any of eight concepts that "if taught, would advocate race or sex discrimination." *Id.* at *1. The District Court found that a portion of the statute was impermissibly vague, but the Court of Appeals reversed and held that none of the statute was unconstitutionally vague.

The Court of Appeals explained that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* at *20 (quoting *United States v. Williams*, 553 U.S. 285, 304 (1985)). Moreover, a law isn't vague just because it raises "borderline factual questions." *Id.* at *21. The Court concluded that although some of the statutory language was cumbersome or awkward, "[u]sing only words of common understanding, each concepts states as correct a discriminatory principle about race or sex. We see no vagueness in any of them." *Id.* at *28 (citing *Boos v. Barry*, 485 U.S. 212, 232 (1988)).

Moreover, the process of implementation of the Challenged Policies by university officials greatly mitigates any claimed vagueness. University officials reviewed potentially problematic course syllabi and advised faculty what if any portions are problematic. *See* Complaint ¶¶ 95, 97, 101, 104 (describing FAQs 1 and 2, Provost's First and Second Guidance). Thus, before they risk any possible enforcement action by the universities, faculty members know how the Challenged Policies are interpreted by university officials. *See* Complaint ¶ 114 (of 5,400 courses reviewed at College Station, hundreds were modified, and 48 of 54 exceptions were granted). As a result, there have been zero disciplinary actions against any faculty members. For all these reasons, Plaintiffs have failed to state a claim that may be granted as to their "vagueness" claim. Their complaint should be dismissed.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative or in addition, the Court should dismiss Plaintiffs' First Amendment and/or Fourteenth Amendment claims pursuant to Federal Rule 12(b)(6).

Date: October 5, 2026

Respectfully submitted.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ROB FARQUHARSON
Deputy Attorney General for Legal Strategy

MICHAEL C. COTTON
Chief, Special Litigation Division

/s/ *David Bryant*
DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500
SDTX No. 808332

MARTIN COHICK
Special Counsel
Texas State Bar No. 24134042
SDTX No. 3855137

JACOB P. DUSTIN
Assistant Attorney General
Texas State Bar No. 24149843
SDTX No. 3947810

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov
martin.cohick@oag.texas.gov
jacob.dustin@oag.texas.gov

***Counsel for Defendants***

## CERTIFICATE OF CONFERENCE

Pursuant to this Court's Local Rule 7(P), I certify that David Bryant, counsel for Defendants, conferred with Jamie Aycock, counsel for Plaintiffs, in writing on October 1 and 2, 2026, and that the parties tried, but could not agree that the pleading deficiencies in the Complaint could be cured in any part by a permissible amendment offered by Plaintiffs as the pleading party.

/s/ *David Bryant*
DAVID BRYANT

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 5, 2026 and that all counsel of record were served by CM/ECF.

/s/ *David Bryant*
DAVID BRYANT