**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, *et al.*,

*Plaintiffs*,

v.

ROBERT L. ALBRITTON, *et al.*,

*Defendants*.

CASE NO. 4:26-CV-06268-DT

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT**

Robert L. Albritton, Jay Graham, David C. Baggett, John W. Bellinger, James R. Brooks, Michael A. Hernandez III, William Mahomes, Jr., Kelley Sullivan Georgiades, and Sam Torn, all in their official capacities as members of the Texas A&M University System Board of Regents (collectively "Defendants"), file this Response in Opposition to Motion for Preliminary Injunction.

## TABLE OF CONTENTS


Table of Contents ... ii

Index of Authorities ... iii

Standard Of Review ... 1

Background And Relevant Facts ... 2

Summary of Plaintiffs' Claims ... 4

Argument ... 6

- I. Plaintiffs Failed to Show a Likelihood of Success on the Merits. ... 6
  - A. Plaintiffs Lack Standing. ... 6
  - B. Plaintiffs' Claims Are Not Ripe. ... 10
  - C. Sovereign Immunity ... 11
  - D. Plaintiffs Have no First Amendment Right to Determine a Public University's Curriculum. ... 14
    - 1. Under the U.S. Constitution, Academic Freedom to Determine What is Taught Belongs to the University, not the Professor. ... 15
    - 2. A Public University's Curricular Choices are Government Speech ... 16
    - 3. Plaintiffs' Claims Likewise Fail Under the Public-Employee Speech Doctrine. ... 20
  - E. Plaintiffs Failed to Show a Substantial Likelihood of Success on Their Fourteenth Amendment Vagueness Claims. ... 25
  - F. Plaintiffs' Delay Bars the Preliminary Injunction They Seek. ... 28
- II. Plaintiffs Failed to Show a Substantial Threat of Irreparable Harm from any Future Action of Defendants. ... 29
- III. Plaintiffs Failed to Show that any Harm to Them from Denial of Their Motion Outweighs the Harm of the Requested Injunction ... 31
- IV. Plaintiffs Failed to Show That the Balance of Harms and Public Interest Favor Their Injunction Request. ... 33
- V. The Court Should Deny Plaintiffs' Motion for Preliminary Injunction Because it Clearly Seeks Equitable Relief Beyond the Power of Federal Equity Courts. ... 34

Conclusion ... 36

Certificate of Service ... 37

## INDEX OF AUTHORITIES

**Cases** **Page(s)**

*A&R Eng. & Testing, Inc. v. Scott*,
72 F.4th 685 (5th Cir. 2023) .......... 9

*Amoco Prod. Co. v. Village of Gambell*,
480 U.S. 531 (1987) .......... 31

*Anderson v. Valdez*,
845 F.3d 580 (5th Cir. 2016) .......... 24

*Anderton v. Tex. Parks & Wildlife Dept.*,
605 Fed. App'x 339 (5th Cir. 2015) .......... 11

*Anibowei v. Morgan*,
70 F.4th 898, 902 (5th Cir. 2023) .......... 30

*Bartello v. City of Sunbury*,
No. 4:13-CV-1340, 2013 U.S. Dist. LEXIS 183949 (M.D. Pa. Sep. 25, 2013) .......... 18

*Bishop v. Aronov*,
926 F.2d 1066 (11th Cir. 1991) .......... 19, 25

*Black Emergency Response Team v. Drummond*,
Nos. 24-6139, 2026 U.S. App. LEXIS 27669 (10th Cir. Sep. 9, 2026) .......... 27

*Boos v. Barry*,
485 U.S. 312 (1988) .......... 26

*Borden v. School Dist. of Tp. Of East Brunswick*,
523 F.3d 153 (3rd Cir. 2008) .......... 15

*Braidwood Mgmt., v. Becerra*,
104 F4th 930 (5th Cir. 2024) .......... 35

*Buchanan v. Alexander*,
919 F.3d 847 (5th Cir. 2019) .......... 21

*Canada Hockey LLC v. Marquardt*,
No. 4:17-CV-00181, 2026 U. S. Dist. LEXIS 111887 (S.D. Tex. Feb. 13, 2026) .......... 12

*Cf. Little v. Llano County*,
138 F.4th 834 (5th Cir. 2025) ........................................................................ passim

*Cf., Parate v. Isibor*,
868 F.2d 821 (6th Cir. 1989)..........................................................................................14

*Chacon v. Granata*,
515 F.2d 922 (5th Cir. 1975) ..........................................................................................30

*Chiras v. Miller*,
432 F.3d 606 (5th Cir. 2005) ..................................................................................... 18, 19

*Choice Inc. of Texas v. Greenstein*,
691 F.3d 710 (5th Cir. 2012) ..........................................................................................10

*Chowdhury v. Univ. of Houston*,
No. 4:25-cv-467, 2026 U. S. Dist. LEXIS 56253 (S.D. Tex. Mar. 18, 2026).....................12

*City of El Cenizo, Texas, v. Texas*,
890 F.3d 164 (5th Cir. 2018)...................................................................................... 1, 31

*Clapper v. Amnesty Int'l*,
USA, 568 U.S. 398 (2013) ...............................................................................................7

*Crawford v. W. Tex. A&M Univ.*,
No. 25-10887, 2026 U.S. App. LEXIS 28625 (5th Cir. 2026)...........................................21

*Dier v. Landry*,
No: 2:24-cv-2306 SECTION: T(5), 2026 U.S. Dist. LEXIS 88339 (E.D. La. Apr. 22, 2026)
...........................................................................................................................10

*Doe v. Univ. of Texas at S. A.*,
No. SA-25-CA-01140-XR, 2026 U.S. Dist. LEXIS 34424 (W.D. Tex. Feb. 19, 2026)......12

*Dolce v. Connetquot Cent. Sch. Dist.*,
No. 25-1197, 2026 U.S. App. LEXIS 26560 (2d Cir. Aug. 31, 2026) .............................. 24

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975) .......................................................................................................35

*eBay, Inc. v. MercExchange, L. L. C.*,
547 U.S. 388 (2006).......................................................................................................33

*Edwards v. Cal. Univ.*,
156 F.3d 488 (3d Cir. 1998) ....................................................................17, 20

*Env. Def. Fund, Inc. v. Alexander*,
614 F.2d 474 (5th Cir. 1980)....................................................................... 28

*Epperson v. State of Ark.*,
393 U.S. 97 (1968) .......................................................................................16

*Evans-Marshall v. Board of Educ. of Tipp City Exempted School Dist.*,
624 F.3d 332 (6th Cir. 2010) .......................................................................15

*Ex parte Young*,
209 U.S. 123 (1908) ................................................................................ 12, 13

*Expedi, Inc v. Rebound Int'l*,
No. 4:20-CV-3897, 2021 U.S. Dist. LEXIS 166046 (S.D. Tex. May 13, 2021).............1, 29

*FDA v. All. for Hippocratic Medicine*,
602 U.S. 367 (2024) .......................................................................................6, 8

*Fisher v. Texas Tech Univ. Regents*,
2026 U.S. Dist. LEXIS 125942 (N. D. Tex. 2026)..............................................34

*Ford Motor Co. v. Tex. Dep't of Transp.*,
264 F.3d 493 (5th Cir. 2001) ........................................................................27

*Graziosi v. City of Greenville*,
775 F.3d 731 (5th Cir. 2015)........................................................................ 24

*Green Valley Spec. Util. Dist. v. City of Schertz*,
969 F.3d 460 (5th Cir. 2020).........................................................................34

*GSA Network v. Morath*,
821 F. Supp. 3d 753 (S. D. Tex. 2026)...........................................................35

*Healthy Vision Association v. Brown*,
821 F. Supp. 642 (N. D. Tex. 2026)...............................................................35

*Hill v. Colorado*,
530 U.S. 703 (2000) ..................................................................................... 26

*Hotze v. Hollins*,
No. 420-CV-03079, 2020 U.S. Dist. LEXIS 204775 (S.D. Tex. Nov. 2, 2020) ........... 2, 28

*Hotze v. Hudspeth*,
16 F.4th 1121, 1125 (5th Cir. 2021) ........................................................................ 2

*Janus v. AFSCME, Council 31*,
585 U.S. 878 (2018) ........................................................................................ 20

*Johanns v. Livestock Marketing Assn.*,
544 U.S. 550 (2005)........................................................................................ 16

*Kennedy v. Braidwood Mgmt.*,
606 U.S. 748 (2025) ........................................................................................ 35

*Kilborn v. Amiridis*,
135 F.4th 1100 (7th Cir. 2025)......................................................................... 16

*Kirkland v. Northside Ind. Sch. Dist.*,
890 F.2d 795 (5th Cir. 1989)........................................................................... 18

*Kirkland v. Northside Independent School Dist.*,
890 F.2d 794 (5th Cir. 1989) .......................................................................... 21

*La Pueblo Entero v. Abbott*,
151 F.4th 273 (5th Cir. 2025) ........................................................................... 8

*La Union del Pueblo Entero v. Abbott*,
187 F.4th 690 (5th Cir. Aug. 12, 2026)..........................................................6, 8

*Laird v. Tatum*,
408 U.S. 1 (1972) ........................................................................................8, 21

*Lake Charles Diesel, Inc. v. CMC*,
328 F.3d 192, 196 (5th Cir. 2003) ...................................................................... 1

*Lee v. York Cty. Sch. Div.*,
148 F.Supp.2d 816 (E.D. Vir. 2006)................................................................. 22

*Lewis v. CH Rental Mgmt. Group*,
No. 4:25-CV-03242, 2026 U.S. Dist. LEXIS 54471 (S.D. Tex. Feb. 9, 2026)..................... 1

*Lovelace v. Se. Massachusetts Univ.*,
793 F.2d 419 (1st Cir. 1986)............................................................................ 14

*Lowery v. Mills*,
157 F.4th 729 (5th Cir. 2025)........................................................................... 21

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................................................................................................7

*Magee v. City of Padre Island*,
No. B-09-227, 2011 U.S. Dist. LEXIS 157343, ............................................................ 26

*Magee v. City of S. Padre Island*,
463 F. App'x 377 (5th Cir. 2012) ................................................................................ 26

*McDonald v. Trustees of Indiana University*,
186 F.4th 917 (7th Cir. Aug. 13, 2026)...........................................................15, 16, 17, 20

*Milw. Cty. Sheriff's Dept. v. Clarke*,
574 F.3d 370 (7th Cir. 2009)..........................................................................................18

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010)...........................................................................................30, 31

*Nathan v. Alamo Heights Ind. Sch. Dist.*,
173 F.4th 576 (5th Cir. 2026)..........................................................................................19

*National Endowment for Arts v. Finley*,
524 U.S. 569 (1998) ......................................................................................................16

*NetChoice, LLC v. Paxton*,
121 F.4th 494 ...................................................................................................................10

*Nichols v. Univ. of S. Miss.*,
669 F.Supp.2d 684 (S.D. Miss. 2009)...............................................................................23

*Nken v. Holder*,
556 U.S. 418 (2009).........................................................................................................31

*North Carolina v. Covington*,
581 U.S. 486 (2017) .........................................................................................................33

*Oller v. Roussel*,
2014 WL 42048836, No. 6:11-CV-002207 (W.D. La. Aug. 22, 2014) .........................23, 25

*Pennhurst State School & Hosp. v. Halderman*,
465 U.S. 89 (1984) .......................................................................................................... 11

*People for the Ethical Treatment of Animals v. Gittens*,
414 F.3d 23 (D.C. Cir. 2005) ............................................................................................18

*Pernell v. Fla. Bd. of Govs.*,
181 F.4th 1135 (11th Cir. July 7, 2026) ........................................................................ 19

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014) ........................................................................................................ 28

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009)........................................................................................16, 17, 20, 30

*Pugel v. Bd. of Trs. of the Univ. of Ill.*,
378 F.3d 659 (7th Cir. 2004) .......................................................................................... 22

*Raj v. La. State Univ.*,
714 F. 3d 322 (5th Cir. 2013) .......................................................................................... 11

*Regents of University of California v. Bakke*,
438 U.S. 265 (1978) ........................................................................................................ 16

*Richmond v. Coastal Bend Coll. Dist.*,
883 F. Supp. 2d 705 (S.D. Tex. 2012) ............................................................................ 24

*Roake v. Brumley*,
170 F.4th 292 (5th Cir. 2026) ........................................................................................ 10

*Roche Prods. V. Bolar Pharm. Co.*,
733 F.2d 858, 865 (Fed. Cir. 1984) ................................................................................ 33

*Rosenberger v. Rector and Visitors of the Univ. of Va.*
515 U.S. 819 (1995) ........................................................................................................ 19

*Roy v. City of Monroe*,
950 F.3d 245 (5th Cir. 2020) .......................................................................................... 25

*Rylander v. Brown*,
No. 4:25-CV-2079, 2025 U. S. Dist. LEXIS 154936 (S.D. Tex. Aug. 6, 2025) .................. 11

*Shields v. Gawk, Inc.*,
No.3:18-CV-00150, 2019 U.S. Dist. LEXIS 69338 (S.D. Tex. Apr. 24, 2019) ................... 33

*Somers v. UT MD Anderson Cancer Ctr.*,
No. 4:19-CV-390, 2019 U. S. Dist. LEXIS 240018 (S.D. Tex. June 28, 2019) .................. 12

*Stronach v. Va. State Univ.*,
No. 3:07CV646-HEH, 2008 U.S. Dist. LEXIS 2914 (E.D. Va. Jan. 15, 2008) .................. 25

*Students Engaged in Advancing Tex. v. Paxton*,
177 F.4th 665 (5th Cir. 2025) .......... 35

*Sullivan v. Tex. A&M Univ. System*,
986 F.3d 593 (5th Cir. 2021) .......... 12

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 7

*Sweezy v. New Hampshire*,
354 U.S. 234 (1957) .......... 16, 20, 32

*Terrell v. Univ. of Tex. Sys. Police*,
792 F.2d 1360 (5th Cir. 1986) .......... 22

*Tex. All. For Ret. Ams. v. Scott*,
28 F. 4th 669 (5th Cir. 2022) .......... 13

*Tex. State LULAC v. Elfant*,
52 F. 4th 256 .......... 8

*Texas v. United States*,
523 U.S. 296 (1998) .......... 10

*Town of Huntington v. Marsh*,
859 F.2d 1134 (2d Cir. 1988) .......... 33

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 33, 34, 35

*Trump v. New York*,
592 U.S. 125 (2020) .......... 10

*U.S. v. Clinical Leasing Serv., Inc.*,
925 F.2d 120 (5th Cir. 1991) .......... 27

*United States v. Texas*,
173 F.4th 660, 662 (5th Cir. 2026) .......... 6

*United States v. Williams*,
553 U.S. 285 (1985) .......... 27

*Urofsky v. Gilmore*,
216 F.3d 401 (4th Cir. 2000) .......... 15

*Va. Office for Protection & Advocacy v. Stewart*,
563 U.S. 247 (2011) .......... 11

*Vapor Tech. Ass'n v. Graham*,
167 F.4th 302, 305 & n.12 (5th Cir. 2026) .......... 6

*Warnoch v. Pecos*,
88 F.3d 341 (5th Cir. 1995) .......... 12

*Washington State Grange v. Washington State Rep. Party*,
552 U.S. 442 (2008) .......... 10

*Weinberger v. Romero-Barcello*,
450 U.S. 305 (1982) .......... 33

*Williams v. Dallas Ind. Sch. Dist.*,
480 F.3d 689 (5th Cir. 2007) .......... 24

*Winter v. NRDC, Inc.*,
555 U.S. 7 (2008) .......... 29

*Wireless Agents, L. L. C. v. T-Mobile USA, Inc.*,
No. 3:05-CV-0094-D, 2006 U.S. Dist. LEXIS 36590 (N.D. Tex. June 6, 2006) .......... 1

*Wozniak v. Conry*,
236 F.3d 888 (7th Cir. 2001) .......... 15, 25

*Zimmern v. Hidalgo*,
No. H-24-4439, 2026 U.S. Dist. LEXIS 52033 (S.D. Tex. Mar. 13, 2026) .......... 6

**Constitutional Provisions & Statutes**

20 U.S. Code § 3403 (a) .......... 32
42 U. S. C. § 1983 .......... 12
U.S. Const. amend. XI .......... 12

**Rules & Regulations**

Fed. R. Civ. P. 65(a) .......... 29
Tex. Educ. Code § 51.352(b) .......... 9
Tex. Educ. Code § 51.354(a) .......... 15
Tex. Educ. Code § 85.11 .......... 2

**Other Authorities**

TAMUS Policy 12.01 .......... 2, 4
Texas A&M University System Policy 08.01 .......... 2, 3, 4

## STANDARD OF REVIEW

A preliminary injunction is a drastic and extraordinary remedy. *Lake Charles Diesel, Inc. v. CMC*, 328 F.3d 192, 196 (5th Cir. 2003); *Lewis v. CH Rental Mgmt. Group*, No. 4:25-CV-03242, 2026 U.S. Dist. LEXIS 54471, at *3 (S.D. Tex. Feb. 9, 2026). It should be granted only if the movant has clearly carried its burden of persuasion on all four factors required for a preliminary injunction. *City of El Cenizo, Texas, v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018). The four requirements for a preliminary injunction are:

1. The movant must show a substantial likelihood of success on the merits;
2. The movant must show a substantial threat of immediate and irreparable harm prior to the time of a judgment on the merits;
3. The movant must show that the harm to movant from lack of a preliminary injunction is greater than the harm to the nonmovant if a preliminary injunction is incorrectly granted; and
4. The movant must show the preliminary injunction will not disserve the public interest.

If the movant fails to carry its burden of proof as to any one of the four factors, the court cannot grant the preliminary injunction. *Expedi, Inc. v. Rebound Int'l*, No. 4:20-CV-3897, 2021 U.S. Dist. LEXIS 166046, at *4 (S.D. Tex. May 13, 2021).

Delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there was no apparent urgency to the request for injunctive relief. *Expedi, Inc.*, 2021 U.S. Dist. LEXIS 166046, at *6–7 (quoting *Wireless Agents, L. L. C. v. T-Mobile USA, Inc.*, No. 3:05-CV-0094-D, 2006 U.S. Dist. LEXIS 36590, at *13 (N.D. Tex. June 6, 2006)). Evidence of an undue delay in bringing suit may be sufficient to rebut the presumption of irreparable harm. *Id.* "This is because the concept of 'irreparable harm' includes that harm is imminent and therefore must be remedied faster than a trial on the merits would allow." *Expedi, Inc.*, 2021 U.S. Dist. LEXIS 166046, at *7; *see Hotze v. Hollins*, No. 420-CV-03079,

2020 U.S. Dist. LEXIS 204775, at * 9–10 (S.D. Tex. Nov. 2, 2020), aff'd in part, vacated in part sub nom. *Hotze v. Hudspeth*, 16 F.4th 1121, 1125 (5th Cir. 2021) (movant failed to show likelihood of success on merits because he "did not act with alacrity").

**BACKGROUND AND RELEVANT FACTS**

The Texas Legislature charged the Board of Regents with governing the Texas A&M University System. Tex. Educ. Code §§ 85.11, 85.21. The Governor appoints the individual members of the Board of Regents. *Id.* § 85.11. Among the Board's expressly assigned duties is the obligation to "regulate the course of study" at the System's institutions. *Id.* § 85.21(a). Plaintiffs concede this authority. Doc No. 1 at 12 ¶ 35.

Plaintiffs assert facial challenges to two policy changes made nearly a year ago by the Texas A&M University System ("TAMUS" or the "System") Board of Regents. Defendants, in their official capacities as members of the TAMUS Board of Regents, voted on November 8, 2025, to adopt changes to TAMUS Policies 08.01 and 12.01 (the "Challenged Policies") relating to the content of the curriculum taught to students in the twelve universities within the System. Declaration of James R. Hallmark ("Hallmark Dec. at ¶ 4. The TAMUS Board of Regents voted on December 18, 2025, to make refinements to the policies changed in November 2025. Hallmark Dec. at ¶ 4. These policy changes were implemented for the 2026 Spring semester in December 2025 and January 2026. Plaintiffs nevertheless delayed bringing this action until August 2026.

Policy 08.01 bars advocacy of race ideology or gender ideology in core courses. "Gender ideology" is defined in the Challenged Policies as the view that self-assessed gender identity should replace biological sex. System Policy 08.01, Definitions. "Race ideology" refers to concepts that shame a race or ethnicity, accuse them of being oppressors, diminish their value, or assign guilt based on alleged conduct of ancestors. *Id.* Policy 12.01 reaffirms that institutions exist for the common good, which depends on an uninhibited search for truth. Faculty retain full academic freedom to teach the subject matter of their courses but may not introduce unrelated controversial matters or deviate from approved syllabi. *Id.*

Since the Challenged Policies were adopted, the System institutions have reviewed curricula before each semester (more than 5,400 courses at Texas A&M University). Doc. 1 at 35 ¶ 114. Declaration of Dr. Michael D. Johnson ("Johnson Dec."). at ¶¶ 9-10. The review is an iterative process. Johnson Dec. at ¶¶ 6. Faculty submit proposed course syllabi, which are reviewed first by university department heads and then by their academic deans. *Id.*

When a course includes content judged by university officials to be inconsistent with the Challenged Policies, faculty members are asked to revise it or to request an exception. Johnson Decl. ¶¶ 6-7. Exceptions are granted if there is a "necessary educational purpose." System Policy 08.01, § 2.1(b). Johnson Dec. at ¶ 7. Plaintiffs acknowledge that of fifty-four exception requests at Texas A&M University in Spring 2026, forty-eight were granted. Doc. 1 at 35 ¶ 114. Johnson Dec. at ¶ 10. Plaintiffs admit that of the more than 5,400 courses reviewed in Spring 2026, only six were cancelled. *Id.* at 35 ¶ 115.

Thus, the Challenged Policies were implemented by the administration of the System and the System universities, not by the Board of Regents or any Defendants. Hallmark Dec. at ¶¶ 5-7. Similarly, the policies are to be enforced by the administration of the System and the System Universities, not by the Board of Regents. Hallmark Dec. at ¶¶ 5-7. In the course of implementing the policy changes, administration officials other than Defendants reviewed thousands of course syllabi, and a small percentage raised issues under the challenged policies.

All faculty members were free to, and many did, exercise their rights to disagree with the decisions as to course syllabi made by university administration officials in the course of that review in January 2026. Importantly, none of the Plaintiffs claim in the Complaint that they were fired, threatened with firing, disciplined, or threatened with discipline for any violation of the Challenged Policies or any disagreement with the Challenged Policies or how they were implemented by university administration officials. No Plaintiffs allege that there is any imminent threat of future disciplinary action against them by reason of the Challenged Policies.

No faculty member has been terminated or disciplined for any violation of the Challenged Policies to date. Hallmark Dec. at ¶ 9. None of the individual Plaintiffs are or have been the subject

of any disciplinary proceedings with respect to the Challenged Policies. There is no imminent threat of disciplinary proceedings against any of the individual Plaintiffs by reason of the Challenged Policies. Hallmark Dec. at ¶ 10.

## SUMMARY OF PLAINTIFFS' CLAIMS

Plaintiffs here assert facial First Amendment challenges and facial Fourteenth Amendment vagueness challenges directed specifically and only at the System's Policies 08.01 and 12.01 (the "Challenged Policies").[1] Section 12.01 expressly protects the academic freedom of A&M System university faculty members.[2]

The Supreme Court and the Fifth Circuit have repeatedly warned that such facial

---

[1] The challenged portion of the 13-page A&M System Policy 08.01 (Civil Rights Protection and Compliance) is quite brief. Subsection 2.1b, quoted at Complaint ¶ 88, provides in relevant part:

> No system academic course will advocate race or gender ideology, or topics related to sexual orientation or gender identity.[1] Upon prior written approval of the member CEO after review of the course and relevant course materials, specific non-core curriculum or graduate courses in some disciplines may teach race or gender ideology, or topics related to sexual orientation or gender identity. Such approval may be granted in limited circumstances upon demonstration of a necessary educational purpose.

"Gender ideology" is defined in A&M System Policy 08.01 to mean "a concept that self-assessed gender identity should replace the biological category of sex or that biological sex has less value or legitimacy than self-assessed gender identity." "Race ideology" is defined in A&M System Policy 08.01 to mean "a concept that attempts to shame a particular race or ethnicity, accuse them of being oppressors in a racial hierarchy or conspiracy, ascribe to them less value as contributors to society and public discourse because of the race or ethnicity, or assign them intrinsic guilt based on actions of their presumed ancestors or relatives in other areas of the world. This also includes course content that promotes activism on issues related to race or ethnicity, rather than academic instruction." Complaint ¶¶ 80,81.

[2] A&M System Policy 12.01 specifically protects academic freedom. Section 1 of Policy 12.01 provides:

> 1. ACADEMIC FREEDOM
>
> 1.1 Institutions of higher education exist for the common good. The common good depends upon an uninhibited search for truth and its open expression. Hence, it is essential that each faculty member be free to pursue scholarly inquiry and to voice and publish individual conclusions concerning the significance of evidence that the faculty member considers relevant. Each faculty member must be free from the corrosive fear that others inside or outside the academic community, because their vision may differ, may threaten the faculty member's professional career or the material benefits accruing from it.
>
> 1.2 Each faculty member is entitled to full freedom in the classroom in discussing the subject that the faculty member teaches, but a faculty member will not introduce a controversial matter than has no relation to the classroom subject or teach material that is inconsistent with the approved syllabus for the course. Each faculty member is also a citizen of the nation, state, and community; and when speaking, writing, or acting as such, must be free from institutional censorship or discipline, subject to academic responsibility. In such instances, the faculty members should clearly state that the faculty member is not speaking for the system academic institution.

challenges are "disfavored" and "hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723, 724 (2024); *La Union del Pueblo Entero v. Abbott*, 167 F.4th 743, 754–55 (5th Cir. 2026); *Voting for America v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013). That's because "[f]acial challenges too often degenerate into conjecture rather than rulings on concrete controversies," and "[s]hoddy hypothetical analysis is not what our federalist system requires." *La Union del Pueblo Entero*, 167 F.4th at 754. Moreover, courts have a duty to use judicial restraint to construe challenged provisions to avoid constitutional conflict wherever possible. *Voting for America*, 732 F.3d at 387.

Here, Plaintiffs' facial challenge exemplifies precisely why such challenges are disfavored. Nowhere in Plaintiffs' 68-page Complaint do they allege that any Defendants have imposed (or even threatened) any employment, disciplinary, or other concrete or particularized injuries to any Plaintiffs pursuant to the Challenged Policies. Thus, the Complaint does not allege any actual enforcement by Defendants of the Challenged Policies against any Plaintiff. Plaintiffs' only arguable allegation of injury is their assertion that individual Plaintiffs generally have been "chilled" or "censored" in their classroom teaching at A&M System institutions; or have not been allowed to teach a course at an A&M System institution that they had previously taught.

As part of their burden of showing a likelihood of success when asserting a facial challenge, Plaintiffs were required to analyze all possible applications of the Challenged Policies; which are constitutional and which are not; and show that the unconstitutional applications of the Challenged Policies substantially outweigh the constitutional ones. *Moody*, 603 U.S. at 723–24; *Woodlands Pride, Inc. v. Paxton*, 168 F.4th 293 (5th Cir. 2026). That is part of the reason that "the choice to litigate a facial challenge comes at a cost." *Moody*, 603 U.S. at 723. But Plaintiffs here have made no attempt to satisfy their *Moody* burden. Their request for a preliminary injunction should be denied for this reason alone.

Plaintiffs also do not allege that any Defendant has any connection with enforcement of the Challenged Policies. Plaintiffs allege no enforcement or threatened enforcement of the Challenged Policies against any of them by anyone, and certainly none by any Defendant. The implementation of the Challenged Policies through a review of course syllabi as described in the Complaint at ¶ 7,

was undertaken by administration officials and academic departments, rather than by any Defendants.

## ARGUMENT

### I. PLAINTIFFS FAILED TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS.

#### A. Plaintiffs Lack Standing.

Standing is a bedrock Article III requirement for a "case or controversy" over which federal courts may have subject matter jurisdiction. Article III requires that "the plaintiffs have a personal stake in the alleged dispute." *United States v. Texas*, 173 F.4th 660, 662 (5th Cir. 2026). "No standing means no likelihood of success on the merits." *Vapor Tech. Ass'n v. Graham*, 167 F.4th 302, 305 & n.12 (5th Cir. 2026). *See Zimmern v. Hidalgo*, No. H-24-4439, 2026 U.S. Dist. LEXIS 52033, at *20–21 (S.D. Tex. Mar. 13, 2026) (no injunctive relief where movant's claimed injury was not "certainly impending" and movant therefore lacked standing). Plaintiffs' lack of standing therefore requires denial of the Motion for Preliminary Injunction.

Plaintiff American Association of University Professors ("AAUP") is a labor union that represents a small percentage of A&M System university faculty.[3] *See* Complaint ¶ 28. AAUP does not claim any personal stake in this case itself, as it is not subject to or regulated by the Challenged Policies. Nor does AAUP claim any legal injury to itself. Instead, Plaintiff AAUP must rely solely on the judge-made doctrine of "associational standing."[4] But establishing associational standing is no easy task. To do so, "a plaintiff organization must show that a specific member has suffered an injury traceable to the challenged provision." *La Union del Pueblo Entero v. Abbott*, 187 F.4th 690, 696 (5th Cir. 2026). What's more, "[w]hen an organization seeks injunctive relief, the member who alleges the injury must show a 'substantial risk' that future injury will occur." *Id.* (quoting

---

[3] Plaintiffs allege that the A&M System has over 4000 faculty, Complaint ¶ 19, but Plaintiff AAUP alleges it has only "hundreds of members spread across the Texas A & M University System." Complaint ¶ 28.

[4] That doctrine has been convincingly criticized by Justice Thomas. *See FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 397–405 (2024) (Thomas, J. concurring). Defendants assert, along with Justice Thomas, that "associational standing" is not based in the Constitution and therefore Article III subject matter jurisdiction is absent in this case as to Plaintiff AAUP. However, Defendants acknowledge that this doctrine is currently supported by Supreme Court and Fifth Circuit precedent.

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)) (quotation omitted). Like all injuries in fact sufficient to show standing, the injury to the plaintiff must be "concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

The individual Plaintiffs all fail to establish these requirements. Plaintiffs failed to provide in their Complaint the required specific allegations that they have suffered any concrete and particularized injury in fact traceable to enforcement of the Challenged Policies by any Defendants. Plaintiffs make no allegations that any of them have been terminated, disciplined, or otherwise injured in a "concrete and particularized, actual or imminent" way. *See id.* Plaintiffs also do not allege in the Complaint that any Article III injury in fact is imminent or certainly impending. *See Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013) ("threatened injury must be certainly impending to constitute injury in fact"; "allegations of possible future injury are not sufficient").

Plaintiffs only allege that they have been denied permission to teach particular courses or course materials or content at their respective A&M System universities[5]; that they experience "confusion" or are "unclear" or "unsure" as to the application of the Challenged Policies in various hypothetical situations; and that they "fear" that teaching certain materials in A&M System university classes "could violate, or could be accused of violating" the Challenged Policies.

Such subjective, abstract, and intangible claimed injuries are insufficient for standing. Subjective fears for which there is no objective basis repeatedly have been found insufficient for standing. *E.g., Clapper*, 568 U.S. at 409 (2013); *Kirkland v. FBI*, No. SA-26-CV-01836-XR, 2026 U.S. Dist. LEXIS 147012, at *4, 7 (W.D. Tex. July 2, 2026) (fear of surveillance); *Figueroa v. United States*, No. 4:25-cv-1139, 2025 WL 4233091, at *7–8 (S.D. Tex. Dec. 11, 2025) (fear of deportation); *Moore v. Bryant*, 205 F. Supp. 3d 834, 852 (S.D. Miss. 2016), *aff'd*, 853 F.3d 245 (5th Cir. 2017) (fear of racial violence); *Crenshaw-Logal v. City of Abilene*, 436 F. App'x 306, 309 (5th Cir. 2011) (subjective chill resulting from fear of governmental use of communications stored on

[5] *E.g.*, Complaint ¶ 31–34.

computer).

Similarly, although a subjective "chill" or self-censorship preventing exercise of First Amendment rights[6] may in some cases provide standing, "[t]he chilling effect must have an objective basis." *La Pueblo Entero v. Abbott,* 151 F.4th 273, 286–87 (5th Cir. 2025) (quoting *Tex. State LULAC v. Elfant*, 52 F.4th at 256). And as the Supreme Court has explained, because "federal courts do not render advisory opinions," "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

Here, Plaintiffs allege zero disciplinary actions or proceedings to enforce the Challenged Policies against any of them; thus, "any chill is purely subjective and therefore inadequate to show injury." *La Pueblo Entero,* 151 F.4th at 286–87. Moreover, when an organization or its members seek injunctive relief, "the member who alleges the injury must show a substantial risk that future injury will occur." *La Union del Pueblo Entero v. Abbott*, 187 F.4th 690, 696 (5th Cir. 2026). The Plaintiffs make no such allegations in the Complaint. Standing (and subject matter jurisdiction) are therefore absent for this additional reason.

Plaintiffs may strongly and sincerely disagree with the wisdom of the Challenged Policies on ideological or pedagogical grounds. Such sincere disagreements between university administration and some faculty have always occurred and always will occur. But they are no basis for legal standing. It is well established that "sincere legal, moral, ideological, and policy objections" do not amount to legal injury in fact or to standing to sue. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 386 (2024). Plaintiffs failed to establish standing because they have not suffered any injury in fact.

Plaintiffs further failed to meet the requirement of causation or traceability for standing. To meet this requirement, Plaintiffs would have had to show that they not only suffered injury in

---

[6] Any claim by Plaintiffs to standing based on alleged "chilling" of First Amendment rights is also precluded because Plaintiffs have no First Amendment rights in performing their duties of teaching A&M System university courses; those courses are government speech not subject to First Amendment challenge. *See* Section IV(A).

fact, but that the injury in fact was caused by or traceable to the actions of the Defendants challenged in the Complaint. Plaintiffs did not do so.

To the contrary, the Complaint describes Challenged Polices adopted by the A&M System Board of Regents for implementation at A&M System institutions by the administrations of those institutions.[7] The actual implementation of the Challenged Policies was not carried out by Defendants, but by numerous officials within the administrations of Texas A&M University or Tarleton State University who are not defendants in this case. And if there ever is any enforcement of the Challenged Policies against any Plaintiffs, it would not be by any Defendants but by individuals within the administrations of universities within the A&M System. Thus, Plaintiffs have sued the wrong parties.

Whatever "injuries" Plaintiffs claim to have suffered from the implementation of the Challenged Policies, they are *not* injuries to Plaintiffs resulting from any specific actions of any Defendants in this case, but from actions of unnamed non-party university officials. To provide standing, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *A&R Eng. & Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023).

Plaintiffs therefore fail to allege injuries traceable to any action of any defendants and fail to establish standing. "[T]raceability is particularly difficult to show where the proffered chain of causation turns on speculative future decisions regarding whether and to what extent it will bring enforcement actions in hypothetical cases." *Id.* For all these reasons, Plaintiffs have failed to carry their burden to show standing to sue any of the named defendants. The court therefore lacks subject matter jurisdiction, and Plaintiffs' Motion for Preliminary Injunction should be denied.

---

[7] This policymaking role is just what Texas law prescribes: "The governing board of an institution of higher education shall provide the policy direction for each institution of higher education under its management and control." Tex. Educ. Code § 51.352(b). But it is not an *enforcement* role.

**B. Plaintiffs' Claims Are Not Ripe.**

Independently, Plaintiffs' Motion for Preliminary Injunction should be denied because their claims are not ripe. "Courts do not decide constitutional cases in the abstract. Nor is constitutional adjudication an exercise in imagination. The role of federal courts is more modest—and more demanding: to resolve concrete disputes grounded in real facts and an actual record." *Roake v. Brumley*, 170 F.4th 292, 297 (5th Cir. 2026) (en banc). In *Roake*, the Fifth Circuit concluded that the facial constitutional claims before it were not ripe for adjudication, and that the preliminary injunction issued by the district court had to be vacated. It thereby enforced the Article III requirement that issues decided by federal courts "must be 'ripe'—not dependent on contingent future events that may not occur as anticipated or may not occur at all." *Id.* (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam) and *Texas v. United States*, 523 U.S. 296, 300 (1998)).

The same conclusion is proper here. Plaintiffs assert a facial challenge against the Challenged Policies that, according to their Complaint, have not been enforced by any Defendants against them or anyone else. "The ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). Thus, a "court should dismiss a case for lack of ripeness when the case is abstract or hypothetical." *Id.*

A facial challenge especially requires full development of a factual record after *Moody*, 603 U.S. at 723, because, even in a First Amendment challenge, the plaintiff must still demonstrate that "a substantial number of applications are unconstitutional, judged in reference to the statute's plainly legitimate sweep," and "the court must assess the full scope of a law's applications" before adjudicating such a challenge. *Id.* at 717–19, 724–25.

"That assessment requires a thoroughly developed factual record." *Dier v. Landry*, No. 2:24-cv-2306 SECTION: T (5), 2026 U.S. Dist. LEXIS 88339 (E.D. La. Apr. 22, 2026) (citing *Washington State Grange v. Washington State Rep. Party*, 552 U.S. 442, 450–51 (2008)). In *NetChoice, LLC v. Paxton*, the Fifth Circuit emphasized on remand the need for a thorough factual

record. 121 F.4th 494, 497–99. There is not and cannot be such a record in this case because the Challenged Policies have not been enforced or applied by Defendants to any Plaintiffs or even to non-plaintiffs. *Cf. Little v. Llano County*, 138 F.4th 834, 837 (5th Cir. 2025) (explaining that applying an uncertain First Amendment standard to thousands of library books would be "a nightmare").

This case would require a court to speculate as to how the Plaintiffs and thousands of other faculty members in TAMUS universities who are not parties to this case might conduct classroom or coursework activities that potentially violate the Challenged Policies. Then the court would have to determine whether those hypothetical classroom/coursework activities would violate those Policies or whether such activities would *not* violate those Policies because of A&M System Policy Section 12.01's clear and explicit authorization for classroom "full freedom of discussion." Next, a court would have to determine which of the conjectured activities would be unconstitutional and which would be constitutional. Then, under *Moody*, a court would have to somehow assess whether "a substantial number of applications are unconstitutional, judged in reference to the [Policies'] plainly legitimate sweep."

Such a task is indeed "abstract and hypothetical" at this point. What Plaintiffs seek here is "premature adjudication," which would entangle the Court in abstract disagreements. The issues presented by this facial pre-enforcement challenge are not ripe for adjudication. The Court lacks subject matter jurisdiction for this reason and should deny the Motion for Preliminary Injunction.

### C. Sovereign Immunity.

Plaintiffs sued each of Defendants solely in their official capacities. Suits against Defendants in their official capacities are regarded as suits against the State. *Rylander v. Brown*, No. 4:25-CV-2079, 2025 U.S. Dist. LEXIS 154936, at *3–4 (S.D. Tex. Aug. 6, 2025); *see, e.g.*, *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Anderton v. Tex. Parks & Wildlife Dept.*, 605 Fed. App'x 339 (5th Cir. 2015); *Raj v. La. State Univ.,* 714 F. 3d 322, 328 (5th Cir. 2013). *See Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011) ("Sovereign

immunity is the privilege of the sovereign not to be sued without its consent."). Accordingly, all Defendants are entitled to and hereby assert state sovereign immunity from this suit, as well as any liability in this suit. "When a defendant is protected by sovereign immunity, federal courts lack subject matter jurisdiction over the lawsuit." *Somers v. UT MD Anderson Cancer Ctr.*, No. 4:19-CV-390, 2019 U.S. Dist. LEXIS 240018, at *4 (S.D. Tex. June 28, 2019) (citing *Warnoch v. Pecos*, 88 F.3d 341, 343 (5th Cir. 1995)). *See also* U.S. Const. amend. XI.

"Public universities are typically considered to be arms of the state and therefore entitled to sovereign immunity." *Id.* The Texas A&M University System is an agency of the State of Texas and entitled to sovereign immunity. *Sullivan v. Tex. A&M Univ. System*, 986 F.3d 593, 595 (5th Cir. 2021). Similarly, public university systems like Texas A&M University System and their agents, universities, and employees are entitled to immunity under the Eleventh Amendment. *See Chowdhury v. Univ. of Houston*, No. 4:25-cv-467, 2026 U.S. Dist. LEXIS 56253, at *6–7 (S.D. Tex. Mar. 18, 2026). Defendants, as agents of the State of Texas, are entitled to Eleventh Amendment immunity unless that immunity has been waived. *Canada Hockey LLC v. Marquardt*, No. 4:17-CV-00181, 2026 U.S. Dist. LEXIS 111887, at *2 (S.D. Tex. Feb. 13, 2026).

Neither the State of Texas nor any Defendant waived immunity in connection with this case. Plaintiffs make no claim of waiver of immunity by any Defendant. Plaintiff alleges claims under 42 U.S.C. § 1983, but Congress did not abrogate state sovereign immunity with that statute. *See, e.g., Doe v. Univ. of Texas at S. A.*, No. SA-25-CA-01140-XR, 2026 U.S. Dist. LEXIS 34424, at *13 (W.D. Tex. Feb. 19, 2026). The State of Texas and Defendants also have not consented to this suit, and Plaintiffs do not allege any such consent to suit.

Accordingly, the Court lacks subject matter jurisdiction of this action by reason of state sovereign immunity and the Eleventh Amendment, and this case must be dismissed, unless Plaintiffs can successfully invoke the "narrow" exception recognized in *Ex parte Young*, 209 U.S. 123 (1908). Although *Ex parte Young* established an exception to Eleventh Amendment sovereign immunity, it does not apply to Defendants here.

The *Ex parte* Young exception is a legal fiction that permits private parties to bring suit for

declaratory or injunctive relief against individual state officials engaged in *ongoing* violations of federal law. *See Ex parte Young*, 209 U.S. at 155–56; *Raj*, 714 F.3d at 328; *Hooks v. Office of Att. Gen. of Texas*, No. 4:25-cv-2667, 2026 U.S. Dist. LEXIS 47585 (S.D. Tex. Mar. 9, 2026) at 8 (citing *Williams ex rel. J. E. v. Reeves*, 954 F.3d 729, 735 (5th Cir. 2020)).

Moreover, the *Ex parte Young* exception can apply only when the state official defendant has a particular duty to *enforce* a challenged statute, ordinance, or policy, not merely a general duty to see that the law is implemented. *Tex. All. For Ret. Ams. v. Scott*, 28 F. 4th 669, 672 (5th Cir. 2022). Here, Plaintiffs challenge no statute, ordinance, or regulation, but only the Challenged Policies. And the Challenged Policies have not been enforced against any Plaintiffs by anyone. No Plaintiffs claim they have been subjected to termination, disciplinary proceedings, or any other tangible adverse action by anyone, and the Complaint does not allege any such adverse actions against any Plaintiff.

Thus, the *Ex parte Young* exception is inapplicable in this case for several independently sufficient reasons. First, the Challenged Policies are enforceable by administration officials at A&M System universities, not by the Defendant members of the A&M System Board of Regents. As policymakers, the Regent Defendants are more analogous in this context to members of the Texas Legislature, who make laws that are then enforced by state officials in the Executive Branch of state government. If a plaintiff wishes to challenge a law as unconstitutional, the plaintiff must sue the executive officials charged with *enforcing* the law, not the members of the Texas Legislature who enacted the law.

Here, the Defendants have adopted the Challenged Policies, but it is the officials in the administration of the universities within the A&M System that have the power to enforce those policies. The universities are the employers of the individual Plaintiffs, and any possible enforcement action relating to the employment relationship would be taken by the employer university and not by the A&M System Board of Regents.

Moreover, the Challenged Policies were adopted by the A&M System Board of Regents in November 2025 and modified in December 2025. And Plaintiffs do not allege any ongoing actions

by any Defendants thereafter. Thus, Plaintiffs do not allege any "*ongoing* violations of federal law" by any Defendants that could fit within the *Ex parte Young* exception. The actions of which Plaintiffs complain allegedly were effectuated in 2026 by university administrators and faculty—not by Defendants—in applying the Challenged Policies adopted in 2025.

Plaintiffs do not allege in their Complaint that any of the Defendants took, threatened to take, or will soon take any future actions that will "imminently" injure any of Plaintiffs. Plaintiffs do not allege any Defendants are about to announce new policies, or take any other future or ongoing action, which might provide a basis for Plaintiffs to argue that their suit fits within the *Ex parte Young* exception. Accordingly, Defendants are entitled to sovereign immunity from this suit; it is barred by the Eleventh Amendment; and the Court should dismiss this case for lack of subject matter jurisdiction.

### D. Plaintiffs Have no First Amendment Right to Determine a Public University's Curriculum.

Plaintiffs' facial First Amendment claim in this action[8] is based on a serious misunderstanding of the Constitution.

Plaintiffs apparently believe a public university has no power to remove from its curriculum courses or subjects that the university believes irrelevant, ineffective, or harmful to its educational mission. In essence, according to Plaintiffs, each faculty member is a university unto him or herself, having veto power over the public university's curricular decisions. *Cf., Parate v. Isibor*, 868 F.2d 821, 827 (6th Cir. 1989) ("The First Amendment concept of academic freedom does not require that a nontenured professor be made a sovereign unto himself."); *Lovelace v. Se. Massachusetts Univ.*, 793 F.2d 419, 426 (1st Cir. 1986) (same). Under Plaintiffs' novel and ahistorical theory of the First Amendment, each faculty hire has a blank check to teach whatever they believe should be included in a course, and the university is barred from saying "no," even if the university

[8] Although Plaintiffs include in their Complaint factual allegations about how the Challenged Policies supposedly affect each individual Plaintiff, their claims are facial, rather than as-applied claims. This is because the relief they seek is to declare the Challenged Policies "unconstitutional on [their] face" and to enjoin implementation or enforcement of the Challenged Policies in their entirety and not only as applied to Plaintiffs. *See* Complaint at pp. 67–68.

determines that a course, subject, or theory has no educational value whatsoever, or is just wrong. Under this theory, a science professor must be permitted to teach that the earth is flat—and the taxpayers of Texas must pay for it—because it would amount to "viewpoint discrimination" for the university to deem flat-earth theory out of bounds.

But for all their bluster about "censorship", Plaintiffs fail to cite a single binding authority for the theory that the First Amendment gives them control over a state university curriculum. And that's because no such authority exists. Under Texas law and U.S. Supreme Court and Fifth Circuit precedent, the right to determine the content of courses taught at a state university belongs to the state university itself.[9] And decades of case law make clear that teachers have no First Amendment right to insist otherwise.

**1. Under the U.S. Constitution, Academic Freedom to Determine What is Taught Belongs to the University, not the Professor.**

Plaintiffs incorrectly claim that the concept of "academic freedom"—as a matter of constitutional law—gives them veto power over a public university's curricular decisions. But Plaintiffs are mistaken. As numerous federal circuits have repeatedly emphasized, to whatever extent the First Amendment protects "academic freedom," that "right inheres in the University, not in individual professors." *Urofsky v. Gilmore*, 216 F.3d 401, 409 (4th Cir. 2000); *Evans-Marshall v. Board of Educ. of Tipp City Exempted School Dist.*, 624 F.3d 332, 344 (6th Cir. 2010) ("[I]t is the educational institution that has a right to academic freedom, not the individual teacher") (quoting *Borden v. School Dist. of Tp. of East Brunswick*, 523 F.3d 153, 172 n.14 (3rd Cir. 2008)); *Wozniak v. Conry*, 236 F.3d 888, 891 (7th Cir. 2001) (same).

This concept was recently summarized well by Judge Easterbrook: "Plaintiffs suppose that professors hold rights against universities about what shall be taught. Yet Academic Freedom belongs to the University." *McDonald v. Trustees of Indiana University*, 186 F.4th 917, 930–31 (7th

[9] Texas law directs that boards of state university systems "shall regulate the course of study" and states: "The final decision-making authority regarding an institution of higher education's degree programs and curricula belongs to the institution. The institution shall make decisions on those matters under the direction of the institution's governing board." Tex. Educ. Code §§ 85.21, 51.354(a).

Cir. Aug. 13, 2026) (Easterbrook, J., concurring). Judge Easterbrook pointed to *Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring), which described the "four essential freedoms *of a university*" as the freedom to determine "who may teach, *what may be taught, how it shall be taught*, and who may be admitted to study" (emphasis added). *See also Epperson v. State of Ark.*, 393 U.S. 97, 112–13 (1968) (Black, J.,[10] concurring) ("[T]here is no reason I can imagine why a State is without power to withdraw from its curriculum any subject deemed too emotional and controversial for its public schools."); *Regents of University of California v. Bakke*, 438 U.S. 265, 312 (1978) (describing "[a]cademic freedom" as "[t]he *freedom of a university* to make its own judgments as to education"). Accordingly, "[a] university has a right to insist that professors provide the sort of education that the school promises to students but can deliver only through agents." *McDonald*, 186 F.4th at 930 (Easterbrook, J., concurring). *See also Kilborn v. Amiridis*, 135 F.4th 1100, 1102 (7th Cir. 2025) (explaining that "when a professor and a university are at loggerheads about what constitutes effective teaching and scholarship, the university has to win. Otherwise the Judicial Branch and the populace at large (through juries) displace academic freedom").

In short, Plaintiffs have attempted to turn academic freedom on its head. It is the university—not the Plaintiffs—that enjoys academic freedom over its curricular decisions.

**2. A Public University's Curricular Choices are Government Speech.**

As the Supreme Court has long recognized, "the Free Speech Clause . . . does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009); *Johanns v. Livestock Marketing Assn.*, 544 U.S. 550, 553 (2005) ("[T]he Government's own speech . . . is exempt from First Amendment scrutiny"). Indeed, "[i]t is the very business of government to favor and disfavor points of view." *National Endowment for Arts v. Finley*, 524 U.S. 569, 598 (1998) (Scalia, J., concurring in judgment).

[10] Justice Black wrote this concurrence eleven years after joining the slim four-member plurality in *Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957), the first case where a Supreme Court plurality or majority introduced the concept of academic freedom. Thus, an original proponent of academic freedom under the law recognized state control over the curriculum.

And this makes sense: "People can protest what the government says, but they cannot sue to make the government say what they want." *Little v. Llano Cty.*, 138 F.4th 834, 852 (5th Cir. 2025) (en banc). In other words, "[w]hen the government speaks for itself, the First Amendment does not demand airtime for all views." *Id.* (quoting *Summum*, 555 U.S. at 467).

The government-speech doctrine—which exempts such speech from First Amendment scrutiny—applies directly to public universities making curricular choices. As held by then-Judge Alito on the Third Circuit, "the First Amendment does not place restrictions on a public university's ability to control its curriculum" because the state has the "ability to say what it wishes when it is the speaker." *Edwards v. Cal. Univ.*, 156 F.3d 488, 491 (3d Cir. 1998) (opinion of Alito, J.); *see also McDonald*, 186 F.4th at 930 (Easterbrook, J., concurring) ("The University is a part of the State of Indiana, which like other governments has a right to convey its own message"). Thus, Plaintiffs have no valid First Amendment claim against the Challenged Policies whatsoever. *See id.*

The Fifth Circuit has not been presented with the question of whether a public university's curricular choices constitute government speech, but Fifth Circuit precedent strongly suggests that this is so. For example, in *Little*, patrons of a county library sued the librarian and the library board members in their official capacities, alleging that they violated the First Amendment by removing from the library seventeen books with racial and sexual themes. 138 F.4th at 838–39. The en banc Fifth Circuit reversed a preliminary injunction and ordered that the plaintiffs' Free Speech claims be dismissed "because a library's collection decisions are government speech and therefore not subject to Free Speech challenge." *Id.* at 865–66. The Court explained that: "Many precedents teach that someone engages in expressive activity by curating and presenting a collection of third-party speech." *Id.* The Court provided several examples: "editors of a poetry compilation choosing among poems, or a newspaper choosing which editorials to run, or a television station choosing which programs to air." *Id.* And just as private parties sometimes engage in speech by curating third party speech: "So do governments." *Id.*

In the same way, a library expresses itself by deciding how to shape its collection. As one court put it: "With respect to the public library, the government speaks through its selection of

which books to put on the shelves and which books to exclude." *People for the Ethical Treatment of Animals v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005). What the library is saying is: "We think these books are worth reading." *Id.* at 837.

Just like the Llano County public library, the A&M universities and other state universities engage in government speech when they select both the courses that will be taught to their students and the content of those courses. Their decisions as to what will be in the classes and coursework they choose to offer to their students—and what will not be offered—are not subject to First Amendment challenge. *See Little*, 138 F.4th at 852. Those choices need not be "viewpoint neutral," just as the Declaration of Independence, the Pledge of Allegiance, and the United States Constitution are not viewpoint neutral. Similarly, the First Amendment "prior restraint" doctrine does not apply to government speech. *E.g., Milw. Cty. Sheriff's Dept. v. Clarke*, 574 F.3d 370, 382 (7th Cir. 2009); *Bartello v. City of Sunbury*, No. 4:13-CV-1340, 2013 U.S. Dist. LEXIS 183949, at *37 (M.D. Pa. Sep. 25, 2013).

The same result is strongly indicated by the Fifth Circuit's decision in *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005). There, a textbook author and students claimed that the school textbook decisions by the Texas State Board of Education engaged in "viewpoint discrimination" and thereby violated their First Amendment rights by not selecting a textbook with certain environmental content. *Id.* at 610. The district court dismissed their lawsuit on a Rule 12(b)(6) motion. The Fifth Circuit affirmed the dismissal because "[a]ny discussion of the constitutionality of a state's decision to reject a textbook for its public schools must begin with the recognition that the states enjoy broad discretionary powers in the field of public education." *Id.* Importantly, "[c]entral among these discretionary powers is the authority to establish public school curricula which accomplishes the states' educational objectives." *Id. See also Kirkland v. Northside Ind. Sch. Dist.*, 890 F.2d 795, 800 (5th Cir. 1989) ("academic freedom" does not give teachers control of public-school curriculum in grades K-12).

Indeed, even though *Chiras* dealt with textbook selection, the Fifth Circuit emphasized this language from the Supreme Court's decision in *Rosenberger v. Rector and Visitors of the Univ. of Va.*:

"When the University determines the content of the education it provides, *it is the University speaking*, and we have permitted the government to regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message." 515 U.S. 819, 833 (1995) (emphasis added).

The Fifth Circuit added that: "the government, *including its educational institutions*, has the discretion to promote policies and values of its own choosing free from forum analysis or the viewpoint-neutrality requirement." *Chiras*, 432 F.3d at 613 (emphasis added). Thus, the Court concluded, "when the SBOE devises the state curriculum for Texas and selects the textbook with which teachers will teach to the students, it is the state speaking." *Id.* at 614.[11]

So, too, it was the state speaking when Defendants adopted the Challenged Policies. Plaintiffs' central claim is that faculty members like the individual Plaintiffs have First Amendment rights to include in A&M System university classes, coursework, and course materials, content that A&M System officials have determined to exclude from those courses. But Plaintiffs' claim—and indeed the entire legal theory behind their lawsuit—is wrong as a matter of constitutional law.[12]

The Plaintiffs, as professors, are not deprived of academic freedom. Professors are free to express themselves in scholarly research, scholarly writing, academic conferences, and in discussions and exchanges of ideas with students, other faculty, and in a wide variety of other

---

[11] Although this is the law in the Fifth Circuit, other circuits have sometimes reached apparently inconsistent results. For example, a recent 2-1 decision in *Pernell v. Fla. Bd. of Govs.*, 181 F.4th 1135 (11th Cir. July 7, 2026), *pet. for cert. filed*, invalidated a Florida statute that, per the Court, "legislated a broad set of speech restrictions banning certain viewpoints relating to race, color, sex and national origin." *Id.* at 1144. But even there, the majority acknowledged that "universities have control over their own curriculum," noting that "it is the university's view of the curriculum that is privileged, not the legislature's." *Id.* at 1154. The majority also emphasized that the case before it involved a "speech ban enacted by political authorities—the Florida legislature and its Governor—who are not the professors' employers and who exercise no direct supervision or control over their employment." *Id.* at 1152. These circumstances in *Pernell* thus easily distinguish it from this case, which is more factually aligned with 11th Circuit's decision in *Bishop v. Aronov*, 926 F.2d 1066, 1078 (11th Cir. 1991) ("We hold that the University's restrictions with respect to classroom conduct issued under its authority to control curriculum do not infringe the free speech or free exercise rights of Dr. Bishop.").

[12] The First Amendment is properly interpreted by reference to its historical context, and in light of what those who drafted and ratified it in the late 1700s intended. *See Nathan v. Alamo Heights Ind. Sch. Dist.*, 173 F.4th 576, 593-602 (5th Cir. 2026). No concept of legal rights of academic freedom existed at that time; indeed, the first public college in America (the University of North Carolina) enrolled its first students in 1795, years *after* the First Amendment was ratified. Thus, Plaintiffs here attempt to create First Amendment rights for themselves that have no historical basis in the Founding era meaning or understanding of the First Amendment. They effectively are asking the Court to re-write the Constitution and find First Amendment rights that the Founders did not intend.

forums. *Bishop v. Aronov*, 926 F.2d 1066, 1076 (11th Cir. 1991) ("The University has not suggested that Dr. Bishop cannot hold his particular views; express them, on his own time, far and wide and to whomever will listen; or write and publish, no doubt authoritatively, on them; nor could it so prohibit him. The University has simply said that he may not discuss his . . . beliefs or opinions under the guise of University courses."). Defendants have taken no action whatsoever to restrict those rights in any way in the Challenged Policies, and Plaintiffs do not allege otherwise. But it is the state university—the public employer of the individual Plaintiffs—that has the right to determine the courses that will be taught at the university, and the content of those courses: as stated in *Sweezy*, "what may be taught [and] how it shall be taught." 354 U.S. at 263 (Frankfurter, J., concurring).

**3. Plaintiffs' Claims Likewise Fail Under the Public-Employee Speech Doctrine.**

As explained above, Plaintiffs have no viable claims against the Challenged Policies because those policies represent core government speech. *See Summum*, 555 U.S. at 467. That should be the end of the matter, as Plaintiffs have no First Amendment right to challenge government speech. *See, e.g., Edwards*, 156 F.3d at 491 (holding professors' challenge barred by the First Amendment because public university curricular decisions are government speech, without reaching *Garcetti* or *Pickering*); *McDonald*, 186 F.4th at 930 (Easterbrook, J., concurring) (same). But should the Court choose to analyze Plaintiffs' claims as public-employee speech under *Pickering* or *Garcetti*, plaintiff's claims likewise fail and for similar reasons.

The Supreme Court has yet to determine whether its more recent employee-speech case, *Garcetti*, fully applies in the context of academia. *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006) (reserving the question of whether the *Garcetti* analysis "would apply in the same manner to a case involving speech related to scholarship or teaching"). But even assuming *Pickering* applies instead—the more favorable standard to Plaintiffs—their claims necessarily fail.[13] *See Pickering v.*

[13] While Plaintiffs cite *Janus*' use of a modified *Pickering* framework—the *NTEU* framework—the issue before *Janus* was whether the employer could institute "a blanket requirement that all employees subsidize speech with which they may not agree." *Janus v. AFSCME, Council 31*, 585 U.S. 878, 907 (2018). Specifically, the law at issue in *Janus* forced public, nonconsenting employees to subsidize a union, even if they choose not to join that union. The Court found that

*Board of Educ.*, 391 U.S. 563, 574 (1968).

As an initial matter, "*Pickering* balancing generally arises in the context of a terminated employee's suing for alleged retaliation." *Lowery v. Mills*, 157 F.4th 729, 744 (5th Cir. 2025) (*abrogated on other grounds by Crawford v. W. Tex. A&M Univ.*, No. 25-10887, 2026 U.S. App. LEXIS 28625, at *8 (5th Cir. 2026)). If Plaintiffs have not suffered an "adverse employment action," "the framework for evaluating [a] speech-code claim is uncertain." *Id.* at 745. And "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 13–14.

Thus, to mount a challenge under *Pickering* in the Fifth Circuit, Plaintiffs "must show that (1) they were disciplined or fired for speech that is a matter of public concern, and (2) their interest in speech outweighed the university's interest in regulating speech." *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019). Here, Plaintiffs falter at the first step.[14] They have not even alleged that they "were disciplined or fired" for any speech. *See id.* Nor could they. They do not point to *any* instance of speech for which they have been punished. And no university official has even threatened them with discipline or punishment for violation of the Challenged Policies. Hallmark Decl. ¶ 10–11.

Likewise, to succeed under *Pickering*, Plaintiffs must show the "words or conduct" in question "are conveyed by the teacher in his *role as a citizen* and not in his *role as an employee*." *Kirkland v. Northside Independent School Dist.*, 890 F.2d 794 (5th Cir. 1989). For example, In *Kirkland*, a school district refused to renew a teacher's contract after the teacher failed to use a school-approved reading list in class and instead assigned different reading. *Id.* at 795. The Fifth Circuit found that the teacher's alleged speech was not in his role *as a citizen* because "he never attended public meetings" or "announced to his colleagues, superiors, or the public" his

*Pickering* was a poor fit in large part because the law was *compelling* speech in support of third parties. This reasoning does not apply here, where Plaintiffs have alleged no compelled speech, and where the government is choosing its own speech. Furthermore, *Janus* itself acknowledges that, "if the speech in question is part of an employee's official duties, the employer may insist that the employee deliver any lawful message." *Id.* at 908.

[14] Plaintiffs do not allege in the Complaint that the Challenged Policies have barred them from speaking as "citizens" on any matter of "public concern", so they have failed to allege a claim under the second step of the *Pickering* test.

opposition to the approved reading list. *Id.* at 800. *See also Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986) (explaining that courts must decide "whether the speech at issue in a particular case was made primarily in the plaintiff's role as a citizen or primarily in his role as an employee"); *Lee v. York Cty. Sch. Div.*, 148 F.Supp.2d 816, 824 (E.D. Vir. 2006) (explaining that "curricular speech fails per se to be a matter of public concern"). Here, the speech at issue is classroom instruction, right in the heartland of Plaintiffs' role as *teachers*. The Challenged Policies do not implicate their scholarship or their ability to speak freely in a variety of other forums—including by criticizing the Challenged Policies.

As for the second step of the *Pickering* balancing test (even assuming Plaintiffs could reach that step), Plaintiffs could not possibly show that "their interest in speech outweighed the university's interest in regulating speech," *see Buchanan*, 919 F.3d at 853, precisely because it is the university, not plaintiffs, which has the right to control its curriculum. Indeed, this is how numerous courts have resolved similar cases, applying *Pickering* to reject the First Amendment claims of public university faculty who wish to teach whatever they want in the classroom. For example, in *Heim v. Daniel*, a professor of economics filed a First Amendment lawsuit after a public university declined to hire him because of his advocacy of "Keynesian economics, an approach that Defendants consider to be outdated." 81 F.4th 212, 214–15 (2d Cir. 2023). The court reasoned that the plaintiff's claims failed under *Pickering* because the professor's First Amendment interests were to be balanced "not only against the usual government employer's interest in the efficient, effective, disruption-free delivery of public services . . . but also against the countervailing 'First Amendment principles' that propel a public university's own 'underlying mission." *Id.* at 230. "On that side of the ledger," the Court explained, "courts have consistently celebrated the need to safeguard universities' self-determination over the substance of the education they provide and the scholarship they cultivate." *Id. See also Bishop*, 926 F.2d at 1076–77 (holding that, when the professor and university disagree about the content being taught, the "University must have the final say in such a dispute" and that the "University's conclusions about course content must be allowed to hold sway over an individual professor's judgments"); *Pugel v. Bd. of Trs. of the Univ. of*

*Ill.*, 378 F.3d 659, 668 (7th Cir. 2004) (holding that "the University's interest in protecting its academic integrity clearly outweighs any interest [the professor] had in presenting what the University determined to be fraudulent data").

Under *Garcetti*, the more recent standard and the one that should apply, Plaintiffs' claims have no viability whatsoever.[15] *See Oller v. Roussel*, 2014 WL 42048836, No. 6:11-CV-002207 (W.D. La. Aug. 22, 2014) (applying *Garcetti* to bar a university professor's First Amendment challenge); *Nichols v. Univ. of S. Miss.*, 669 F.Supp.2d 684, 698–99 (S.D. Miss. 2009) (same). *Garcetti* sets forth the basic principles that now govern the First Amendment rights of public employees: "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti*, 547 U.S. at 418. That's because "Government employers, like private employers, need a significant degree of control over their employees' words and actions." *Id.* If it weren't for that control, "there would be little chance for the effective provision of [the Government's] services."[16] *Id.*

The Supreme Court expressly recognized that public employees have First Amendment rights as citizens to speak out on matters of public concern, but "[held] that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. The Court explained that this common-sense rule "does not prevent [public employees] from participating in public debate." *Id.* at 422. Those employees can still contribute to constitutionally protected "civic discourse." *Id.* But the Constitution "does not invest them with the right to perform their jobs however they see fit." *Id.*

Thus, there is a threshold question a court must consider: whether the plaintiff's speech allegedly protected by the First Amendment was in his or her role as a "citizen" or "made

[15] In *Buchanan*, the Fifth Circuit applied *Pickering* rather than *Garcetti*, 919 F.3d at 853, but we are aware of no Fifth Circuit opinion that has explicitly determine that *Garcetti* does not apply in the context of academia, so it remains an open question both in the Fifth Circuit and in the U.S. Supreme Court.

[16] *Garcetti* also notes that public employees "often occupy trusted positions in society," so when those employees "speak out, they can express views that contravene government policies or impair the proper performance of governmental functions." *Garcetti*, 547 U.S. at 418.

pursuant to their official duties." *Williams v. Dallas Ind. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007). "Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties." *Id.*

This threshold question—whether the allegedly protected speech was made as part of the public employee's official duties—is a question of law to be resolved by the court. *Rodrigues v. City of Corpus Christi*, No. 16-41004, 2017 U.S. App. LEXIS 7245, at *5 (5th Cir. Apr. 25, 2017) (citing *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015)). In making that determination, the Fifth Circuit has held that a public employee's speech is made pursuant to his official duties when the speech is made in the course of performing his employment, whether or not the speech was specifically demanded of the employee. *Anderson v. Valdez*, 845 F.3d 580 (5th Cir. 2016); *Richmond v. Coastal Bend Coll. Dist.*, 883 F. Supp. 2d 705, 715–16 (S.D. Tex. 2012).

The individual Plaintiffs here are teachers. A central portion of their official duties is the provision of classroom instruction and assignment of coursework to students of the A&M System universities. There can be no serious dispute that what the individual Plaintiffs teach their students as part of their classroom instruction and coursework is "speech made in the course of performing their employment."[17] Plaintiffs here speak as government employees in their classroom instruction and coursework. They have no First Amendment rights to override the curriculum choices made by the Defendants or the A&M System universities.

This is a commonsense result. The central mission of their employer, the A&M System universities, is to teach university students through a program of courses and classwork. Indeed, this mission is mandated by Texas law. *See* Tex. Educ. Code § 85.21. Thus, the work of A&M System faculty members, like the individual Plaintiffs in carrying out that central teaching mission in courses and classwork is certainly part of Plaintiffs' official duties as government employees. When they teach, they are performing their official duties as public employees.

---

[17] *See Dolce v. Connetquot Cent. Sch. Dist.*, No. 25-1197, 2026 U.S. App. LEXIS 26560, at *15 (2d Cir. Aug. 31, 2026) (teacher's classroom decorations such as pride flag were not protected by First Amendment because they were government speech as part of the teachers' classroom duties).

Other courts have reached the same result for similar reasons. *See, e.g.*, *Oller*, 2014 WL 4204836, at *6–7 (holding that professor had no valid First Amendment claim because his teaching and assignment of textbooks were speech made pursuant to his official duties); *Nochols*, 669 F.Supp.2d at 698–99 (holding that statements made by professor to a student "in the classroom setting" were not protected by the First Amendment); *Wozniak v. Conry*, 236 F.3d 888, 891 (7th Cir. 2001) (reasoning that whatever right to academic freedom existed belonged to the university, not the individual professor because "it is the [u]university's name, not the [professor]'s that appears on the diploma; the [u]niversity, not [the professor] who certifies to employers and graduate schools a student's successful completion of a course of study."); *Stronach v. Va. State Univ.*, No. 3:07CV646-HEH, 2008 U.S. Dist. LEXIS 2914, at *7–9 (E.D. Va. Jan. 15, 2008) (academic freedom is "the *university's* right, and not the *professor's* right"); *Bishop*, 926 F.2d at 1075 ("The [Supreme] Court's pronouncements about academic freedom . . . cannot be extrapolated to deny schools command of their own courses.").

Therefore, Plaintiffs failed to show a substantial likelihood of success on their First Amendment claim, and the Court should deny their Motion for Preliminary Injunction.

### E. Plaintiffs Failed to Show a Substantial Likelihood of Success on Their Fourteenth Amendment Vagueness Claims.

Plaintiffs allege that the Challenged Policies are facially unconstitutionally vague because their language "confuses" the individual Plaintiffs about how they must follow or implement those Policies. However, these allegations are baseless.

A criminal law is unconstitutionally vague if it either "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or authorizes or even encourages arbitrary and discriminatory enforcement." *Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020). But the Challenged Policies are not criminal laws. They impose no fines, penalties, or other legal consequences on Plaintiffs, or anyone else. Accordingly, the Challenged Policies are not subject to Fourteenth Amendment Due Process scrutiny at all.

On the other hand, "[c]ourts generally have upheld statutes against vagueness challenges

when they 'communicate their reach in words of common understanding,' or when the 'likelihood that anyone would not understand any of [the] common words seems quite remote.'" *Magee v. City of Padre Island*, No. B-09-227, 2011 U.S. Dist. LEXIS 157343, at *17 (S.D. Tex. 2011) (citation modified) (quoting *Boos v. Barry*, 485 U.S. 312, 332 (1988); then quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)) aff'd *Magee v. City of S. Padre Island*, 463 F. App'x 377, 380 (5th Cir. 2012).

And, importantly, *facial* vagueness challenges are disfavored by courts for several reasons, including that such claims "often rest on speculation" and would require a court to engage in speculation "about hypothetical or imaginary cases." *Magee*, 463 F. App'x at 380 (5th Cir. 2012) (citation modified). That is especially so here, where Plaintiffs have been subjected to no disciplinary or other adverse actions by their universities and speculate about what might or might not violate the Challenged Policies. Indeed, such speculation "will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Id.* (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000).

The Fourteenth Amendment prohibits deprivations of "life, liberty, or property" without due process of law. But the Challenged Policies have deprived no one (and certainly no Plaintiffs) of any constitutionally protected "life, liberty, or property." They prescribe no criminal or civil penalties, and Plaintiffs have alleged no concrete and particularized injuries they have suffered because of the Challenged Policies.

In evaluating a vagueness challenge, "[c]ourts must indulge a presumption of constitutionality and carefully examine a statute before finding it unconstitutional," even when considering "extremely broad" criminal statutes that carry "harsh" penalties. *La Union del Pueblo Entero*, 167 F.4th at 756 (quoting *United States v. Anderton*, 901 F.3d 278, 283 (5th Cir. 2018)). To prevail on a void-for-vagueness challenge in the Fifth Circuit, a plaintiff must "establish that the law is vague, 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *La Union Pueblo Entero*, 167 F.4th at 756 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). Under this standard, a plaintiff bears the weighty burden of demonstrating that

the law is "impermissibly vague in all of its applications." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023) (quoting *Home Depot, Inc. v. Guste*, 773 F.2d 616, 627 (5th Cir. 1985)).

Moreover, a significantly more demanding standard applies to vagueness challenges to a civil statute. In a challenge to a civil statute, a law is only void for vagueness "if it 'commands compliance in terms so vague and indefinite as really to be no rule or standard at all' or if it is 'substantially incomprehensible.'" *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493 (5th Cir. 2001) (quoting *U.S. v. Clinical Leasing Serv., Inc.*, 925 F.2d 120, 122 n.2 (5th Cir. 1991)).

Plaintiffs do not allege that the Challenged Policies are "no rule or standard at all" or that they are "substantially uncomprehensible." Nor could Plaintiffs do so consistently with Fed. R. Civ. P. 11. While any law or policy is subject to questions of interpretation at the edges, the Challenged Policies are reasonably clear and contain definitions of the key terms of "race ideology" and "gender ideology" to provide additional clarity. *See* n. 1 *supra*.

The Tenth Circuit Court of Appeals recently rejected a vagueness argument similar to that asserted by Plaintiffs here. In *Black Emergency Response Team v. Drummond*, Nos. 24-6139, 24-6140 & 24-6141, 2026 U.S. App. LEXIS 27669 (10th Cir. Sep. 9, 2026), the plaintiffs challenged, as unconstitutionally vague, a statute providing that Oklahoma public K-12 schools could not "require or make part of a course" any of eight concepts that "if taught, would advocate race or sex discrimination." *Id.* at *1. The District Court found that a portion of the statute was impermissibly vague, but the Court of Appeals reversed and held that none of the statute was unconstitutionally vague.

The Court of Appeals explained that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* at *20 (quoting *United States v. Williams*, 553 U.S. 285, 304 (1985)). Moreover, a law isn't vague just because it raises "borderline factual questions." *Id.* at *21. The Court concluded that although some of the statutory language was cumbersome or awkward, "[u]sing only words of common understanding, each concept states as correct a discriminatory principle about race or sex. We see no vagueness in any of them." *Id.*

at *28 (citing *Boos*, 485 U.S. at 332).

Moreover, the process of implementation of the Challenged Policies by university officials has greatly mitigated any claimed vagueness. University officials reviewed potentially problematic course syllabi and advised faculty what if any portions are assessed as problematic. *See* Complaint ¶¶ 95, 97, 101, 104 (describing FAQs 1 and 2, Provost's First and Second Guidance); Hallmark Decl. Thus, before they risk any possible enforcement action by the universities, System faculty members know how the Challenged Policies are interpreted by university officials. *See* Complaint ¶ 114 (of 5,400 courses reviewed at College Station, hundreds were modified, and 48 of 54 requested exceptions were granted). As a result, there have been zero disciplinary actions against any faculty members because of the Challenged Policies. Hallmark Decl. Accordingly, Plaintiffs failed to show a substantial likelihood of success on their facial vagueness claim and their Motion for Preliminary Injunction should be denied.

### F. Plaintiffs' Delay Bars the Preliminary Injunction They Seek.

Plaintiffs claim that their First and Fourteenth Amendment rights were violated when Defendants adopted the Challenged Policies in November and December of 2025. According to the Complaint, this supposed constitutional violation was clear to Plaintiffs when university officials (not Defendants) conducted their course curriculum review by January 2026. Yet Plaintiffs did not bring this action until August 8, 2026, nine months after the November changes to Policies 08.01 and 12.01. Indeed, Plaintiffs are scheduled to file their final brief in support of their Motion for Preliminary Injunction on November 6, just two days shy of the one-year anniversary of the November 2025 changes they claim have irreparably injured them.

Plaintiffs' actions, or lack of action, speak more loudly than their words. As this Court has correctly observed, "the promptness with which one brings an injunction action colors both the elements of likelihood of success on the merits and irreparable harm." *Hotze v. Hollins*, No. 4:20-CV-03079, 2020 U.S. Dist. LEXIS 204775 (S.D. Tex. Nov. 2, 2020) (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 685 (2014) and *Env. Def. Fund, Inc. v. Alexander*, 614 F.2d 474,

478 (5th Cir. 1980)). In *Hotze*, the Court found a delay of several weeks between when the plaintiffs could have filed their action and when they actually did so precluded a finding of likely success on the merits. *Id.* at *10.

In *Expedi, Inc., v. Rebound Int'l*, the Court noted that the plaintiff could have brought the action by February 2020, but did not do so until November 2020, a gap of nine months. No.4:20-CV-3897, 2021 U.S. Dist. LEXIS 166046, at *8 (S.D. Tex. May. 14, 2021). The Court found this "delay in bringing suit indicates that any harm being caused by the alleged infringement was not 'imminent.'" *Id.* The delay likewise rebutted any presumption that the harm was "irreparable," indicating instead that "there [was] no apparent urgency to the request for injunctive relief." *Id.* (quotation marks and citation omitted).

Plaintiffs offer no excuse for their delay in bringing this suit. On the other hand, the Texas A&M System universities are now in the middle of their Fall semester. Courses and course syllabi for this semester have long since been approved. Tens of thousands of A&M System students expect, and have a right to expect, that the courses they have paid for and are taking will have the content described in those syllabi. They have the right to expect, for example, that a children's literature course they are taking will not veer into a faculty member's unapproved promotion of gender ideology or critical race theory.

Yet the preliminary injunction Plaintiffs now seek in the middle of this Fall semester would allow just that. Plaintiffs' delay is yet another reason why the Court should deny their Motion for Preliminary Injunction. Instead, the Court may consider accelerating a decision of this case on the merits by granting Defendants' pending Motion to Dismiss or consolidate Plaintiffs' Motion for Preliminary Injunction with an early trial on the merits. *See* Fed. R. Civ. P. 65(a).

## II. PLAINTIFFS FAILED TO SHOW A SUBSTANTIAL THREAT OF IRREPARABLE HARM FROM ANY FUTURE ACTION OF DEFENDANTS.

Plaintiffs have failed to show an imminent and substantial threat of irreparable harm to them by any Defendants, as is required for the drastic and extraordinary remedy of a preliminary injunction. *Winter v. NRDC, Inc.*, 555 U.S. 7 (2008).

A preliminary injunction is a "drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 165 (2010). To succeed in an action for such a remedy, Plaintiffs must demonstrate that "the anticipated injury is imminent and irreparable" absent injunctive relief. *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). Furthermore, Plaintiffs must establish that the threat of such an imminent and irreparable injury is substantial, rather than merely possible or speculative. *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023).

In this case, Plaintiffs neither allege nor submit any evidence of any actual or threatened disciplinary action against them by reason of the Challenged Policies. And if any action to enforce the Challenged Policies were ever to be taken against them, it would not be taken by any of Defendants—who do not enforce the Challenged Policies—but by university administration officials who are not named as parties in this case. In *Anibowei*, the Fifth Circuit denied the plaintiff's request for a preliminary injunction because, even if the government's actions did lead to irreparable harm, the plaintiff was only able to provide "scant and circumstantial evidence," which was insufficient to demonstrate a substantial threat of imminent and irreparable injury. *Id.* at 903. Plaintiffs in this case neither allege or submit any evidence of imminently threatened adverse action by Defendants, and, as a result, Plaintiffs fall even shorter of carrying their burden.

Despite their claims to the contrary, Plaintiffs do not have First Amendment rights either to determine the content of the courses they are employed to teach or to teach any particular course. The content of the courses taught at the universities of the Texas A&M University System is government speech and thus not subject to First Amendment challenges. *See Chiras*, 432 F.3d at 607 (holding that "the selection of curricular materials and textbooks was clearly governmental speech and not a forum for First Amendment purposes."); *see also Little*, 138 F.4th at 851–52 (holding that "[t]he Free Speech Clause . . . does not regulate government speech.") (quoting *Summum*, 555 U.S. at 467). Accordingly, Plaintiffs' claim that they will be imminently and irreparably harmed by deprivation of their First Amendment rights to teach gender or race ideology in university classes is without merit. Thus, Plaintiffs suffer no constitutional injury, let alone the

substantial and imminent threat of irreparable harm from such an injury.

Similarly, Plaintiffs do not face any substantial threat of imminent and irreparable harm by reason of the alleged vagueness of the Challenged Policies. The university course review process has clarified at great length the syllabi of the courses to be taught by the individual Plaintiffs, and Plaintiffs had the opportunity to seek changes or exceptions to the approved syllabi where they are deemed necessary. Thus, whatever initial questions may have existed in late 2025 and early 2026 as to the application of the then-new Challenged Policies, those questions are now largely resolved. Plaintiffs face no substantial and imminent threat of irreparable harm from the alleged vagueness of the Challenged Policies. As a result, Plaintiffs high burden to show entitlement to such a "drastic and extraordinary remedy" as a preliminary injunction is not met. *Monsanto Co.* 561 U.S. at 165.

## III. Plaintiffs Failed to Show that any Harm to Them from Denial of Their Motion Outweighs the Harm of the Requested Injunction.

A preliminary injunction also "calls for assessing the harm to the opposing party and weighing the public interest." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As with each of the other preliminary injunction factors, Plaintiffs—as movants—bear this burden. *City of El Cenizo, Texas* 890 F.3d at 176. Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (2008(quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)).

First, the harm to Plaintiffs should the injunction be denied does not outweigh the harm to the students affected should the injunction be granted. At the beginning of the current Fall semester, students in the Texas A&M University System reviewed the published syllabi of the courses offered. They chose the courses they deemed best suited to further their educational objectives. Those students or their parents have paid tuition, and they are entitled to be taught the course content set forth in the syllabi they selected.

Plaintiffs dispute this. Plaintiffs demand a preliminary injunction that would allow them to teach in this Fall semester race ideology, gender ideology, or related topics *not* included in the course syllabi the students chose. These students would be harmed by the mid-semester insertion

of course material that they did not choose. And the Texas A&M University System and its universities would be harmed by the denial of *their* right of academic freedom recognized in *Sweezy*—the "right to determine what will be taught, [and] how it will be taught." 354 U.S. at 263 (Frankfurter, J., concurring).

Second, a broader public interest is at stake here as well. The State of Texas and its taxpayers make public higher education available in Texas. Through their elected officials, Texans have a right to select citizens like Defendants to make policies for Texas institutions of public higher education. Those public officials have the right to select and offer the educational content that they believe best prepares the students at those institutions to become productive citizens.

The public interest lies in allowing them to do so. Even though there is and always will be vigorous debate as to what educational experiences best prepare students for citizenship, those decisions should be made in a democracy by those entrusted with these important choices by the Legislature and Governor—the elected representatives of the people of Texas. For a federal court to deny them this authority would be contrary to our nation's commitment to federalism and the preservation of state authority over education, reserved to it by the 10th Amendment of the U.S. Constitution and recognized by federal law. 20 U.S. Code § 3403 (a). ("The establishment of the Department of Education shall not . . . diminish the responsibility for education which is reserved to the States and the local school systems and other instrumentalities of the States."). Accordingly, the preliminary injunctions sought by Plaintiffs would actively disserve the public interest.

Here, the balance of harms clearly counsels against the preliminary injunction that Plaintiffs demand. Not only did Plaintiffs delay bringing this action for well over six months, but they seek preliminary injunctive relief in the middle of the Fall semester. That relief would substantially harm the students whose interests should be—but apparently are not in Plaintiffs' view—entitled to priority over the ideological interests of Plaintiffs. Such relief would also deprive the State of its right to offer the curriculum it sees fit. As a result, Plaintiffs have not met their burden for a preliminary injunction, as Plaintiffs have failed to prove that the harm of denying the injunction outweighs the harm of granting the injunction.

## IV. PLAINTIFFS FAILED TO SHOW THAT THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR THEIR INJUNCTION REQUEST.

Although Plaintiffs have fallen short of meeting the requirements for preliminary injunctive relief here, courts retain equitable discretion to deny such relief even when a movant has met all legal requirements. *See Weinberger v. Romero-Barcello*, 450 U.S. 305, 313 (1982). The Supreme Court in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006), vacated the judgment of a court of appeals that had stated that injunctions should be denied only in "unusual" cases or "exceptional circumstances" where a patent violation had been proved. The Court emphasized that federal district courts retain "considerable discretion" "in determining whether the facts of a situation require it to issue an injunction." *Id.* (quoting *Roche Prods. v. Bolar Pharm. Co.*, 733 F.2d 858, 865 (Fed. Cir. 1984)).

The Court in *Shields v. Gawk, Inc.*, No. 3:18-CV-00150, 2019 U.S. Dist. LEXIS 69338 (S.D. Tex. Apr. 24, 2019), found a statutory violation but declined a request for injunctive relief, citing *Town of Huntington v. Marsh*, 859 F.2d 1134, 1143 (2d Cir. 1988) ("injunctive relief does not follow automatically upon a finding of statutory violations" but depends on "traditional equitable principles"). This is so because "[f]ederal judges are not mechanically obligated to issue an injunction for every violation of law." *Id.* Rather, federal judges "must assess whether the relief requested comports with "what is necessary, what is fair, and what is workable." *Id.* at *13 (quoting *North Carolina v. Covington*, 581 U.S. 486, 488(2017)).

What's more, any injunctive relief ordered could apply at most to a modest percentage of System faculty and the courses they are teaching. That is because *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025), and subsequent cases make clear that federal equity courts generally lack authority to issue injunctive relief for the benefits of non-parties. Thus, any possible injunctive relief would at most affect the named individual Plaintiffs and other members of Plaintiff AAUP, which the Complaint describes as "hundreds" out of "more than four thousand faculty" in the System. Complaint at ¶¶ 19, 28. It would be neither fair nor workable if, because of the preliminary injunction Plaintiffs seek, the Challenged Policies would fully apply to most faculty and the courses

they teach, but not to the AAUP union members and the courses they teach.

Even worse, the preliminary injunction Plaintiffs seek would potentially plunge this and other Courts into what the Fifth Circuit aptly described as a "nightmare." *See Little*, 138 F.4th at 837. In *Little*, the Fifth Circuit referred to the "nightmare" of policing every public library choice to include or exclude a book from its collection. *Id.* Here, too, it's not fair or workable for a federal court to be involved in issues of whether a particular faculty member's classroom lecture or discussion has veered across the line into gender or race ideology. For these reasons of fairness and workability, the Court should deny the Motion for Preliminary Injunction.

## V. THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION BECAUSE IT CLEARLY SEEKS EQUITABLE RELIEF BEYOND THE POWER OF FEDERAL EQUITY COURTS.

Plaintiffs' Motion for Preliminary Injunction requests a preliminary injunction against any "enforcement" of the Challenged Policies by Defendants. Defendants do not "enforce" the Challenged Policies at all, but this requested preliminary injunction is fatally flawed for another and more fundamental reason as well.[18] It is beyond the power of federal equity courts to grant injunctive relief that extends beyond the relief necessary for the parties to this suit. Here, Plaintiffs seek preliminary injunctive relief that would not be limited to enforcement against Plaintiffs but would impermissibly extend to thousands of non-party faculty members across the twelve universities of the Texas A&M University System.

This universal injunctive relief conflicts with the United States Supreme Court's decision in *Trump v. CASA, Inc.* The Court there reviewed the historical practices of equity court in England, in the "founding-era courts of equity in the United States," and in early Supreme Court decisions. 606 U.S. at 842–43. The Court emphasized that it has "consistently rebuffed requests

[18] Plaintiffs also improperly ask this Court for injunctive relief "rescinding their previous enforcement of the Policy." Plaintiffs' Motion for and Memorandum of Law in Support of Preliminary Injunction (Doc. No. 26) at 16. But such retrospective relief against public officials would be impermissible under the *Ex parte Young* exception to sovereign immunity and thus beyond the Court's jurisdiction. *See Green Valley Spec. Util. Dist. v. City of Schertz*, 969 F.3d 460, 473 (5th Cir. 2020) (en banc) (retrospective relief not permitted under *Ex parte Young*); *Fisher v. Texas Tech Univ. Regents*, No. 5:26-CV-00073, 2026 U.S. Dist. LEXIS 125942, at *3–4 (N. D. Tex. June 8, 2026) (same).

for relief that extended beyond the parties." *Id.* at 843. *See also Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931 (1975) ("Neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs."). Thus, the Court concluded that federal courts lack power to issue "universal injunctions" that extend beyond the named plaintiffs, effectively granting relief to non-parties. 606 U.S. at 856. Yet this is precisely the preliminary injunction that Plaintiffs seek in this case.

The Fifth Circuit has enforced these principles.[19] In *Students Engaged in Advancing Tex. v. Paxton*, 177 F.4th 665 (5th Cir. 2025), a district court issued a universal injunction against Texas officials' enforcement of S.B. 2420, the "App Store Accountability Act." The Fifth Circuit granted a stay of that injunction pending appeal because, *inter alia*, the District Court's universal preliminary injunctions likely "fall outside the bounds of a federal court's equitable authority" in barring Texas from enforcing S.B. 2420 against anyone. *See id.* (quoting *CASA*, 606 U.S. at 847). Rather, as the Court explained, "any such relief, if warranted, would be an injunction limited to enforcement against the . . . plaintiffs." *Id.*

Other courts in the Fifth Circuit have recognized that injunctive relief must be limited to the parties before the court, even when a law is found facially unconstitutional. *See, e.g.*, *Healthy Vision Association v. Brown*, 821 F. Supp. 642, 656–57 (N.D. Tex. 2026) (explaining that *CASA* applies in a facial challenge under the First Amendment and thus the State was enjoined from enforcing the challenged law only "against plaintiffs or their members"); *GSA Network v. Morath*, 821 F. Supp. 3d 753, 781 (S.D. Tex. 2026) (explaining that under *CASA*, "injunctive relief may not 'directly interfere with the enforcement of contested statutes or ordinances except with respect to the particular [] plaintiffs'" (quoting *CASA*, 606 U.S. at 843–44)).

---

[19] Even before *Trump v. CASA, Inc.*, the Fifth Circuit required injunctive relief to be party-specific in all but carefully limited instances. *See Braidwood Mgmt., v. Becerra*, 104 F4th 930, 954–55 & n.122 (5th Cir. 2024), *rev'd on other grounds sub nom. Kennedy v. Braidwood Mgmt.*, 606 U.S. 748 (2025).

Accordingly, even if a preliminary injunction was appropriate here (it is not), any injunction would necessarily be limited to enforcement of the Challenged Policies against the named Plaintiffs.

## CONCLUSION

For all the reasons stated above, Defendants respectfully ask that the Court deny Plaintiffs' Motion for Preliminary Injunction.

Date: October 16, 2026

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ROB FARQUHARSON
Deputy Attorney General for Legal Strategy

MICHAEL C. COTTON
Chief, Special Litigation Division

Respectfully submitted.

*/s/ David Bryant*
DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500
SDTX No. 808332

MARTIN COHICK
Special Counsel
Texas State Bar No. 24134042
SDTX No. 3855137

JACOB P. DUSTIN
Special Counsel
Texas State Bar No. 24149843
SDTX No. 3947810

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov
martin.cohick@oag.texas.gov
jacob.dustin@oag.texas.gov

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 16, 2026 and that all counsel of record were served by CM/ECF.

/s/ *David Bryant*
DAVID BRYANT